Jimmy HERITAGE *v.* STATE of Arkansas

CR 96-735                                    936 S.W.2d 499

Supreme Court of Arkansas
Opinion delivered December 16, 1996

*Larry Dean Kissee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. On March 10, 1995, the appellant was arrested when he picked up a package at the UPS office in Batesville. The package contained a controlled substance, methamphetamine. Officers searched the appellant at the scene and also discovered methamphetamine in the watch pocket of his jeans. As a result, the appellant was charged with two counts of possession of a controlled substance with intent to deliver. He was convicted of one count, for which he received a sentence of twenty-five years. On the other count, he was convicted of the lesser offense of possession, for which he received a sentence of seven years. The trial judge ordered the sentences to run consecutively. We affirm

the convictions.

Heritage raises seven issues on appeal. Included among them is a challenge to the sufficiency of the evidence to support his conviction for possession with intent to deliver. That issue requires a detailed recitation of the facts, which are as follows. Early on March 10, 1995, UPS employee Jessica Clayton drove from Batesville to Little Rock to pick up the day's packages. Among the packages she retrieved was one bearing the following address: Justin Heritage, 25 Triangle Drive, Trailer No. 26, Batesville, Arkansas. Justin Heritage was the appellant's fourteen-year-old son. The package had been shipped with the priority status of "next day air" from Downey, California. Ms. Clayton took special notice of the package because the appellant was a former employee. of UPS. She knew that the appellant had moved from the Triangle Drive address. Further, since she drove by that address every day on her way to and from work, she was aware that Trailer No. 26 was unoccupied. Knowing the address to be improper, and knowing that delivery of the package was guaranteed by 10:30 a.m., Ms. Clayton, in accordance with UPS company policy, opened the package to locate information which would lead to a correct address. Inside, she found a bag of rocks, some rags, and some fabric-softener sheets. The package also emitted a foul odor. Suspicious, she brought the matter to the attention of the Little Rock supervisor. He suggested that she show the package to the supervisor in Batesville.

Upon her return to Batesville, Ms. Clayton immediately showed the package to her boss, Randy McFadden. McFadden examined the contents of the package and found, in addition to what Ms. Clayton had seen, a plastic bag with the notation "1/4 pound" on it. Inside the bag was a brownish-yellow rock. McFadden called the sheriff's office and told them he had a package addressed to a former employee and that the package might contain drugs. Two narcotics investigators, Darren Plaster and Roger Tate, arrived at the UPS office shortly thereafter, at about 9:30 a.m. Approximately the same time, Jimmy Heritage arrived at the UPS office to pick up the package. The evidence is unclear as to whether Heritage arrived at the office of his own accord or whether he had been called and told that the package was there.

Once the officers found out that Heritage was on the scene, they went into an office so as not to alert him to their presence. (Heritage had taken some notice of the officers but, since they

arrived in plain clothes and an unmarked vehicle, there is no way of knowing whether Heritage thought they were policemen.) The officers waited while McFadden approached Heritage with the package, which had been resealed, and a signature clipboard. According to McFadden, he stood close enough to Heritage so that Heritage could see the address on the package. The two became involved in a conversation about a gun Heritage wanted to trade. Heritage went out to his truck, purportedly to retrieve the gun. Instead, he drove away.

McFadden returned to his office and told the officers what had transpired. The package was then reopened and a field test performed on the material inside. It tested positive for amphetamines. The officers decided to call for reinforcements and to set up surveillance in anticipation of Heritage returning to pick up the package. The next activity occurred around 11:00 a.m. Heritage called McFadden and asked him to deliver the package to the trailer listed on the address label. McFadden, who was also aware that Heritage had moved and that the trailer was vacant, declined to do so. Finally, near 5:00 p.m., Heritage returned to the UPS office. He told the counter clerk that he "came back to get my package, I mean Justin's." He signed for the package and carried it outside. At that point, he was arrested and handcuffed. While handcuffed, Heritage tried to reach into his right front pocket. The pocket was searched and a bag, which later turned out to contain 1.011 grams of 92.3% methamphetamine, was found. The substance in the UPS package was sent to the crime lab. It was revealed to be 102.92 grams of 78.3% methamphetamine.

### Sufficiency of the Evidence

Heritage argues that there is no substantial evidence that he knowingly possessed the drugs in the UPS package with the intent to deliver them. Substantial evidence is that which is forceful enough to compel a conclusion one way or another and which goes beyond speculation or conjecture. *Misskelley* v. *State*, 323 Ark. 449, 915 S.W.2d 702 (1996). In determining whether there is substantial evidence to support a conviction, we review the evidence in the light most favorable to the appellee and consider only that evidence which supports the verdict. *Moore* v. *State*, 315 Ark. 131, 864 S.W.2d 863 (1993). There is ample evidence in this case of intent to deliver. Possession of amphetamines in an amount exceeding two hundred milligrams creates a rebuttable presumption of intent to

deliver, Ark. Code Ann. § 5-64-401(d) (Repl. 1993). The presumption amounts to substantial evidence of intent to deliver. *Owens* v. *State*, 325 Ark. 110, 926 S.W.2d 650 (1996). However, Heritage's argument is primarily directed to the "possession" element of the crime. He contends that, since the package was not addressed to him and he did nothing more than retrieve it from the UPS office, he did not knowingly possess what was inside the package. The proof, when viewed in a light most favorable to the State, supports the inference that the appellant knew what the package contained. The evidence was susceptible of the interpretation that the appellant showed up at the UPS office on the morning of March 10 without having been contacted by UPS, leading to the conclusion that he was expecting the package. Further, the evidence showed that, on his first visit to UPS, he left unexplainedly without having picked the package up. He attempted to have McFadden deliver the package to an unoccupied residence even though he knew, as a former employee of twenty-three years, that such a request was against company policy. He picked up the package and signed for it, stating he "came back to get my package, I mean Justin's." He was in personal possession of methamphetamines in his own pocket. Finally, the jury might have found it implausible that a person in California might send a drug shipment, via UPS, to a fourteen-year-old boy.

■ A person's state of mind is seldom capable of proof by direct evidence. It must be ascertained from the circumstances surrounding the event. *Carter* v. *State*, 324 Ark. 249, 921 S.W.2d 583 (1996). The circumstantial evidence in this case supports the jury's verdict.

### Motion to Sever Offenses

■ For his second argument, Heritage claims that the trial court should have severed the count relating to the drugs found in the UPS package from the count relating to the drugs found in his pocket. The decision on whether to grant severance is within the trial court's discretion. *Passley* v. *State*, 323 Ark. 301, 915 S.W.2d 248 (1996). While offenses may not be joined solely on the basis that they are of the same or similar character, *Id.*, they may be joined if they are part of a single scheme or plan. See A.R.Cr.P. 22.2. The appellant relies on *Teas* v. *State*, 266 Ark. 572, 587 S.W.2d 28 (1979) to argue that his offenses were not part of a single scheme or plan. In *Teas*, the appellant sold $20.00 worth of marijuana to a

man on December 5. He sold two morphine pills to the same man on December 14. We held that the trial court should have severed the offenses. The case at hand is readily distinguishable. The offenses in this case did not occur nine days apart; they were virtually simultaneous. The appellant was in possession of two distinct amounts of the same type of controlled substance at the same time and at the same location. Each substance was possessed in a weight sufficient to raise the presumption of intent to deliver. We find no abuse of discretion by the trial court in refusing to sever the offenses.

### Search and Seizure

The appellant argues that a search warrant used to effect a search of the UPS package was invalid. He also claims that the warrantless search of his person was without reasonable cause. Below, he filed a motion to suppress the evidence found as a result of each search. The motion was denied by the trial court.

We address the warrantless search first. An officer who makes a lawful arrest of a suspect is authorized to search the person of the arrestee to look not only for weapons but for the fruits and instrumentalities of the crime. *Stout* v. *State*, 304 Ark. 610, 804 S.W.2d 686 (1991). See also A.R.Cr.P. 12.1. The appellant claims that this is not a "search incidental to arrest" because his arrest was without reasonable cause. Reasonable cause exists where the facts and circumstances within the officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to conclude that an offense has been or is being committed. *Gaylor* v. *State*, 284 Ark. 215, 681 S.W.2d 348 (1984). At the time the appellant was arrested, he was in possession of a package which the officers knew to contain illegal drugs. Even though the package was addressed to the appellant's son, the appellant had shown an interest in the package sufficient to lead authorities to conclude he was aware of its contents. Therefore, reasonable cause to arrest the appellant existed and the warrantless search of his person was justified.

Our review of the validity of the search warrant requires the recitation of some additional facts. After Heritage was arrested, officers Plaster and Tate began preparation of an affidavit for the purpose of securing a warrant to search the UPS package. The front page of the affidavit noted that the package was addressed

to Justin Heritage. However, in that part of the affidavit containing the facts establishing grounds for issuance of a warrant, the officers stated that they had received a call from Randy McFadden declaring that he had a package "addressed to a former employee." The appellant contends that this constitutes a misstatement to the issuing magistrate, such that the warrant should be invalidated. We disagree. We are not completely convinced that a search warrant was necessary in this case since the officers initially viewed the contents of the package at the invitation of a private actor. See *United States v. Jacobsen*, 466 U.S. 109 (1984). However, even if a warrant was necessary, the misstatement contained in the affidavit does not invalidate the warrant. To prevail, the appellant was required to show by a preponderance of the evidence that, one, the false statement was made knowingly and intentionally or in reckless disregard of the truth, and, two, the false statement was necessary to a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154 (1978). The trial judge found that, while the statement may have been a mistake, there was no evidence that a falsehood was perpetrated knowingly and intentionally or in reckless disregard of the truth. We will not reverse the trial judge's finding on a motion to suppress unless it is clearly against the preponderance of the evidence. *Magar v. State*, 308 Ark. 380, 826 S.W.2d 221 (1992). The evidence at the suppression hearing belied the notion that anything other than a careless mistake had been made by the officers. The officers noted in their cover sheet and in the warrant they prepared that the package was addressed to Justin Heritage. The issuing magistrate, Judge Roy Thomas, testified that he was aware that the package was addressed to Justin and that Justin was the appellant's son. This evidence indicates not only that there was no knowing, intentional or reckless misconduct, but that the misstatement in the affidavit was not the basis for a finding of probable cause.

### Evidence at Trial

During the testimony of Officer Alan Cockerill, the prosecutor asked the officer "the normal purity level that you find as a narcotics officer on the streets of Batesville, Arkansas." The officer answered, twenty to forty-five percent. Later, the officer was asked the market value of the drugs involved in this case. He answered, $100.00 to $120.00 for the drugs found in the appellant's pocket and $2,000.00 to $3,000.00 for the drugs in the UPS package. The appellant argued that information was irrelevant because the weight

of the drugs, the only necessary consideration, had already been established. The trial judge overruled the objection.

■ A trial judge's ruling on relevancy issues will not be disturbed absent an abuse of discretion. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). It is true that the weight of the drugs creates a presumption of intent to deliver. However, since the presumption is not conclusive, the State may offer additional evidence on the issue of intent to deliver. See also *Hoback v. State*, 286 Ark. 153, 689 S.W.2d 569 (1985).

### Instruction on Entrapment

■ The appellant proffered instructions on the affirmative defense of entrapment. Entrapment occurs when a law-enforcement officer or any person acting in cooperation with him induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording the person an opportunity to commit an offense does not constitute entrapment. Ark. Code Ann. § 5-2-209 (Repl. 1993). Our law has been that, if a defendant denies committing an offense, he cannot assert that he was entrapped into committing the offense. *Morris v. State*, 300 Ark. 340, 779 S.W.2d 526 (1989). The appellant asks us to carve out an exception to that rule for situations in which the State's case-in-chief contains sufficient evidence of entrapment. See *Mathews v. United States*, 485 U.S. 58 (1988). We do not deem it necessary to reach that issue because the evidence in this case doesn't merit an entrapment instruction. While officers and UPS officials provided the appellant with the opportunity to commit the crime, there is no showing that he was induced or persuaded to commit the crime. If there is no evidence to support an instruction, it is not error to refuse it. *Baker v. State*, 310 Ark. 485, 837 S.W.2d 471 (1992).

### Remarks in Closing Argument

During closing argument in the sentencing phase of the trial, the appellant's counsel made the following statement:

> If you send Mr. Heritage to the penitentiary, you all know what the situation is in the penitentiary right now. They may have to turn a murderer or a rapist out —

The prosecutor, without making a formal objection, stated that the argument was "improper" and "unfounded" and "a false

statement." Counsel were asked to approach the bench. During their argument at the bench, the appellant objected on the grounds that the prosecutor was raising his voice, allowing the jury to hear his remarks. The appellant asked for a mistrial. The trial court polled the jury, asking if they had heard any of the bench conference. They had not, and the motion was denied. The court also denied a mistrial motion with regard to the prosecutor's remark that defense counsel had made a false statement.

A mistrial is a drastic remedy which should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Kemp* v. *State*, 324 Ark. 178, 919 S.W.2d 943 (1996). Considering that, in this case, the remarks occurred during the sentencing phase, the jury did not hear the remarks emanating from the bench conference, the jury had been instructed that remarks of counsel are not evidence, and no admonition was requested, we uphold the trial court's denial of the mistrial motions.

Affirmed.