Rebecca THOMAS *v.* STATE of Arkansas

CA CR 97-1084                                  973 S.W.2d 1

Court of Appeals of Arkansas
Division II
Opinion delivered May 27, 1998

*Chester Baugus*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. Rebecca Thomas was convicted following a jury trial in Madison County Circuit Court of first-degree murder after shooting and killing her husband, Delmer Thomas. The trial court sentenced her to a twenty-year prison term. She contends on appeal that the trial court abused its discretion by admitting hearsay testimony from the decedent's ex-wife concerning her phone conversation with the decedent the

evening of the shooting, and that the trial court erred by refusing to instruct the jury concerning self-defense. We hold that although the trial court was mistaken in overruling appellant's objection under the dying declaration exception to the hearsay rule found at Rule 804(b)(2) of the Arkansas Rules of Evidence, the trial court's ruling that the alleged hearsay testimony by the decedent's ex-wife concerning the decedent's statements during their phone call was admissible is affirmable based upon the exceptions to the hearsay rule found at Rule 803(1) — present sense impression — and (3) — then existing mental, emotional, or physical condition. We further hold that appellant's allegation of error concerning the trial court's refusal to instruct the jury about self-defense is procedurally barred because appellant's counsel failed to submit a written jury instruction. Therefore, we affirm appellant's conviction and sentence.

On February 16, 1997, appellant shot and killed Delmer Thomas at their home in the Georgetown area of Madison County. They arrived home at approximately 3:30 p.m. after a day of drinking and visiting at the home of another couple, and had been quarreling about a child that Delmer Thomas had supposedly fathered out of wedlock. Appellant contended at trial and argues in her appeal that the decedent had a history of being physically abusive by pushing her, slapping her, and yelling at her. Appellant testified at trial that during their argument on February 16, 1997, the decedent placed a gun in her hands, cocked it, but told her that it was unloaded. Appellant testified that the decedent lunged toward her while she was trying to reset the hammer of the gun, and that it discharged.

During the case in chief for the prosecution, the State called Marilyn Thomas, the ex-wife of Delmer Thomas, to testify about a phone conversation that she had with the decedent immediately before he was shot. Appellant objected to her testifying about that phone conversation based on the rule against admitting hearsay, and the trial court initially sustained appellant's objection. After the State requested a bench conference, the trial court excused the jury and allowed the State to proffer the proposed testimony from Marilyn Thomas. The trial court then ruled that the challenged testimony about the phone conversation could be admitted into

evidence as an exception to the hearsay rule. Marilyn Thomas then testified as follows during direct examination by the prosecution:

Q At around 5:30 on the 15th of February, you received —

A Sixteenth.

Q Oh, the 16th? You received a phone call from Delmer Thomas, is that correct?

A (Nods head.)

Q What did he tell you?

A He said, "Becky wanted me —"

Q I can't hear you.

A "Becky wanted me to call and tell you what she's about to do. She's going — she has a gun pointed at me. She wanted me to call and tell you what she's going to do. She's going to shoot me." He said, "Talk to her."

Q What happened after that?

A Becky got on the phone and she said, "I have a gun pointed at Delmer," and she called him some names.

Q What names did she call him?

A She said, "I have a gun pointed at Delmer. He's a f'ing son-of-a-bitch and I'm going to shoot him." I said, "Becky, that's not funny." I said, "Is the gun loaded?" And she said, "Yeah, it's loaded" — no, I said, "Somebody is going to get hurt." She said, "Yeah, Delmer, and I'm going to shoot him."

Q Did this conversation go on for a period of time?

A It seemed like an hour.

Q Do you know how long it actually was?

A No, I know what time I got off the phone.

Q What was the conversation about after that? I mean, that seems kind of like the pinnacle of my phone conversations. What did you talk about for the rest of the time?

A    He said, "She's sitting on the couch. She has two guns pointed at me. She has a loaded .22." I said, "Delmer, hang up so I can call the cops." He said, "No, because then she will shoot me. If I try to get the gun, she'll shoot me. If I hang up, she's going to shoot me." I said, "Is it really loaded?" And at one time, he did hang up and then he called me back. I said, "Is the gun loaded?" He said, "Yeah, she just shot past my head through the roof." And then she was yelling at him.

Q    What was she yelling?

A    He said, "She's sitting on the couch with a loaded .22, cocking it and she has it pointed at my head." She said, "No, Delmer, it's pointed at your feet." At one time, he said, "Now she wants me to call the neighbors, Carl and Mary Lou, and tell them what she's going to do to me." It was crazy.

Q    When you hung up, what did you do?

A    Well, he started — before that, he was very calm and scared. He said, "Becky, please just leave and take your guns with you." Then he started yelling, "Don't touch that hammer, don't." Then he said, "I'll call you right back." And I said, "You better." And he said, "Don't call the cops." That was it.

Q    He hung up or did you hang up?

A    He hung up.

Rule 801(c) of the Arkansas Rules of Evidence defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. A declarant is a person who makes a statement. Ark. R. Evid. 801(b). Hearsay is not admissible except as provided by law or by the rules of evidence. Ark. R. Evid. 802. However, Rules 803 and 804 of the Arkansas Rules of Evidence provide for exceptions to the general rule against the admissibility of hearsay.

At trial, counsel for the State argued that the testimony by Marilyn Thomas about her phone conversation with Delmer Thomas was admissible based upon the exception to the general

rule against admitting hearsay stated at Rule 804(b). Rule 804 lists several situations whereby statements that would otherwise be nonadmissible as hearsay may nevertheless be admitted because the declarant is unavailable as a witness, such as when the declarant is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his or her statements; or when a declarant persists in refusing to testify concerning the subject matter of his or her statement despite an order of the court to do so; or when a declarant testifies to a lack of memory of the subject matter of his or her statement; or is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or is absent from the hearing and the proponent of the statement has been unable to procure his or her attendance (or in specified instances, attendance or testimony) by process or other reasonable means. *See* Rule 804(a), Arkansas Rules of Evidence. Rule 804(b) states:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . .

(2) Statement under belief of impending death. A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

■ ■ This exception to the general hearsay rule is known in our case law as the dying declaration exception. The Arkansas Supreme Court has stated that in order to qualify as a dying declaration, the statement must be made by a witness who believed at the time of the statement that his death was imminent and whose declaration referred to the cause of his death. *Boone v. State*, 282 Ark. 274, 668 S.W.2d 17 (1984). This fact need not be shown by the declarant's express words alone, but can be supplied by inferences fairly drawn from his condition. *Id.* It is the declarant's belief in the nearness of death when he makes the statement, not the swiftness with which death actually ensues, that is most important. *Bargery v. State*, 37 Ark. App. 118, 825 S.W.2d 831 (1992). The appellate court will reverse the determination of the trial court that evidence is admissible as a dying declaration only if there is an abuse of discretion. *Id.*

■  In this case, we do not find evidence that Delmer Thomas was possessed of a sense of imminent and inevitable death. Neither the words reported during the trial testimony of Marilyn Thomas, nor other circumstances surrounding his situation, indicated that Delmer Thomas believed that he was going to die, although they certainly indicate his belief that he was in danger of being shot. We are unable to extend the dying declaration exception to the hearsay rule to situations involving people who are not dying or who do not believe that they are dying when they make statements that are later offered into evidence.

■  However, this does not mean that we must reverse the trial court's ruling concerning the admissibility of Marilyn Thomas's testimony. Rule 103(a) of the Arkansas Rules of Evidence states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and, in the case of a ruling admitting evidence, a timely objection or motion to strike appears of record which states the specific ground of objection if the specific ground is not apparent from the context. This is simply another acknowledgment of the harmless-error rule found at Rule 61 of the Arkansas Rules of Civil Procedure.

■ ■  It is well settled that we will affirm a trial court if it reaches the right result, although for a different reason. *See Crowder v. Crowder*, 303 Ark. 562, 798 S.W.2d 425 (1990). This case presents such a situation. Although the trial court was mistaken when it admitted the testimony from Marilyn Thomas about her phone conversation with Delmer Thomas based upon the State's reliance upon the dying declaration exception to the hearsay rule, the challenged testimony was admissible under either or both of two other hearsay exceptions. Rule 803 of the Arkansas Rules of Evidence lists a number of exceptions to the hearsay rule whereby statements may be admitted into evidence regardless of the availability of the declarant. Rule 803(1), regarding present sense impression, and 803(3) regarding then existing mental, emotional, or physical condition, are applicable to this case. They read as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

. . .

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Marilyn Thomas's testimony about what Delmer Thomas said during their phone conversation shortly before he was shot meets both exceptions. She testified about Delmer Thomas's statements describing being held by appellant at gunpoint during their phone conversation. He plainly was relating his present sense impression of the event and his condition. He was also communicating his then existing state of mind, emotion, and physical condition when he told Marilyn Thomas that appellant was pointing a .22 at his head, that she had shot past his head, and that she had threatened to shoot him.

■ Finally, we can affirm the trial court's ruling to admit this testimony on another basis. Marilyn Thomas testified that appellant told her that she was going to shoot Delmer Thomas, and that she had a loaded gun, and that the loaded gun was pointed at Delmer Thomas. Thus, the hearsay testimony can be considered admissible for the reasons already stated, and because appellant's statements to Marilyn Thomas established its relevancy. *See* Ark. R. Evid. 402.

The other point raised by appellant is that the trial court erred by refusing to instruct the jury concerning self-defense. At the close of the trial, counsel for appellant requested that the trial court instruct the jury regarding self defense in connection with the shooting based on what she terms in her brief as "a continuous and systematic pattern of physical abuse." Appellant argues that the only reason the trial court refused to give the self-defense instruction was because the prosecutor forced the appellant to choose between accident and self-defense.

 

We are unable to review appellant's allegation of error, however, because neither the abstracted record nor the trial transcript contains the requested instruction. Instead, counsel for appellant has appended to the appellant's brief what he argues was the requested instruction on self-defense. Our supreme court has held that where an appellant was denied a jury instruction, her failure to proffer or abstract the desired instruction as part of her appeal was fatal to her appellate argument. *Kelley v. Medlin*, 309 Ark. 146, 827 S.W.2d 655 (1992). Moreover, it is well settled that where a requested instruction does not appear in either the abstract or the transcript, the appellate court will not consider it error to refuse to give the instruction. *Pharo v. State*, 30 Ark. App. 94, 783 S.W.2d 64 (1990).

Affirmed.

PITTMAN and AREY, JJ., agree.