2011 Ark. 529

**David SMOAK, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–71.**

Supreme Court of Arkansas.

Dec. 15, 2011.

Rehearing Denied Jan. 19, 2012.

Candice Anne Cabaniss Settle, Van Buren, Brandon J. Harrison, Fort Smith, for appellant.

Dustin McDaniel, Atty. Gen., Laura Shue, Little Rock, for appellee.

JIM HANNAH, Chief Justice.

Appellant David James Smoak was convicted by a Crawford County jury of internet stalking of a child in violation of Arkansas Code Annotated section 5–27–306 (Supp.2009). He was sentenced to a term of 96 months' imprisonment, with 24 months suspended. On appeal, Smoak contends that the circuit court erred in denying his motion for directed verdict because there was insufficient evidence to support his conviction. He also contends that the circuit court erred as a matter of law by denying his attempt to utilize an entrapment defense and by failing to instruct the jury on entrapment. We affirm in part and reverse and remand in part.

Smoak's first argument on appeal is that the circuit court erred in denying his motion for directed verdict because there was insufficient evidence to support his conviction. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *E.g.*, *Camp v. State*, 2011 Ark. 155, 381 S.W.3d 11. In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

The facts are adduced from the testimony and evidence at trial. Van Buren Police Department Detective Donald Eversole testified that he created a profile on Yahoo, posing as a fifteen-year-old girl from Van Buren named Amanda Moore, with the online screen name *pageant_gurl433*. The profile included a picture of a teenaged girl. On September 8, 2009, at approximately 3:30 p.m., Eversole entered the Arkansas "romance" chat room as Amanda, under the name *pageant_gurl433*. Smoak, using the screen name *fire fighteremt987*, initiated a conversation with Amanda at 3:47 p.m. Smoak told her that he was twenty-seven years old.[1] Amanda told Smoak that she was fifteen years old, and at 3:52 p.m., he responded, "free trip to jail lol [laugh out loud]." Smoak also stated, "when u get old enough u will be hell on wheels u will have boys lined up at your door 2 have a shot to go out with u just be pacient." At 4:08 p.m., Smoak asked about the age of the boys she dated and what they did. Amanda responded, "what do u think he was 24." Smoak replied, "well there no telling probley stayed in the bed most of the time most 24 year olds i knew was horney to be honest." Smoak added, "well most guys thats all they want is sex sum are more open about that but thats what they want i know u know that but its true." He further stated, at 4:22 p.m., "well i like it its fun feels good but when u don't have anyone to make love with you don't."

At 5:06 p.m., Amanda told Smoak she was hungry. She said that she liked "chicken mcnuggets," and Smoak asked, "u want sum," "where u live at . . . to bring u nuggets." Amanda said, "well, i thought you liked me but i don't want u to drive all the way just to give me chicken nuggets." Smoak responded, "well my luck u would be a cop . . . and i would go to jail for bringing u chicken nuggets." When Amanda told Smoak that he had only of-

1. The record reveals that Smoak's date of birth is October 14, 1980. Therefore, Smoak was twenty-eight years old on September 8, 2009.

fered chicken nuggets, he replied, "well could be more just trying to be safe." Smoak offered to bring her dessert and said, "well i would give u more than dinner but u got to say u want it might be cream filled if u want it." Smoak also said, "ok i ofered to cum over and let u eat and talk or whatever u have in mind," and "u can do what u want to do with me." For over an hour, Smoak continued to ask about her address or bringing her food, before she finally told him where she lived.

At 6:32 p.m., Amanda said that she did not want to get pregnant, and Smoak responded, "have to meet first then u can deside if u do or don't." When Amanda suggested that they might postpone their meeting, Smoak told her not to "tease" him. Smoak asked, "u want me to cum or not," which Detective Eversole testified was a reference to semen. Amanda responded, "[how] many times ... lol," and Smoak replied, "find out." Amanda then asked, "u got rubbers," and Smoak responded, "yep."

After they agreed to meet, Smoak picked up food at McDonald's and drove to the address given to him by Amanda. There, law enforcement officers arrested Smoak. Detective Eversole testified that several condoms were found above the driver's visor in Smoak's truck.

James David Smoak, Smoak's father, testified that Smoak was a high school graduate, but that he has "always been a special eds kid." According to his father, Smoak was "slow" and could be "easily led ... by suggestion."

Section 5–27–306(a)(2) provides:

A person commits the offense of internet stalking of a child if the person being twenty-one (21) years of age or older knowingly uses a computer online service, internet service, or local internet bulletin board service to

(2) Seduce, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in:

(A) Sexual intercourse;

(B) Sexually explicit conduct; or

(C) Deviate sexual activity.

Smoak, who was twenty-eight years old when he communicated online with "Amanda," does not dispute that he believed he was communicating with a fifteen-year-old girl. Rather, he contends that, during this communication, he did not seduce, solicit, lure, or entice Amanda in an effort to arrange a meeting with her for the purpose of having sex with her. Smoak claims that a review of the chat log will reveal that he only sought to bring Amanda some food and perhaps strike up a friendship with her.

We conclude that there is substantial evidence that Smoak seduced, solicited, lured, or enticed a person he believed to be fifteen years of age or younger in an effort to arrange a meeting for the purpose of having sex. Shortly after Smoak initiated the conversation in an Arkansas "romance" chat room, he learned that Amanda was fifteen years old and joked that her age could get him a free trip to jail. Smoak asked Amanda about the age of her boyfriends and what they did, and when Amanda said her last boyfriend was twenty-four years old, Smoak said that most twenty-four year olds were "horney," and that most guys wanted sex. He said that sex was "fun" and "feels good," but that he did not have "anyone to make love with." When Amanda told Smoak that she was hungry, he offered to bring her some food. Even though Smoak told Amanda, "with my luck u would be a cop," he continued to ask Amanda for her address so he could meet her. He also told Amanda

not to "tease" him when she suggested that they postpone their meeting.

After Amanda told Smoak she did not want to get pregnant, he told her that they could meet first and then she could decide. He also told her that he had rubbers, and several condoms were found in his truck when he was arrested.

Smoak claims that, given his indisputably low intelligence, "there was too much guesswork on the jury's part" regarding whether he seduced, solicited, lured, or enticed Amanda for the purpose of having sex. We disagree.

The jury heard the testimony of Smoak's father that Smoak was slow and easily led by suggestion. The jury also heard Detective Eversole's testimony about the online conversation he had with Smoak on September 8, 2009, when Eversole was posing as Amanda, a fifteen-year-old girl from Van Buren. Moreover, a copy of the chat log from that conversation was admitted into evidence. The jury has the sole authority to evaluate the credibility of witnesses and to apportion the weight to be given to the evidence. *E.g., Bell v. State,* 334 Ark. 285, 973 S.W.2d 806 (1998). It is for the jury to resolve any questions of conflicting testimony and inconsistent evidence, and the jury may choose to believe the State's version of the facts over the defendant's. *Id.* Viewing the evidence in the light most favorable to the verdict, it was reasonable for the jury to infer from the circumstances that Smoak seduced, solicited, lured, or enticed a fifteen-year-old girl to arrange a meeting for the purpose of having sex with her.

■ Smoak next contends that the circuit court erred as a matter of law by denying his attempt to utilize an entrapment defense and abused its discretion in refusing to instruct the jury on entrapment. During voir dire, both Smoak's counsel and the State discussed entrapment and hypothetical entrapment situations with potential jurors. In opening statement, Smoak's counsel denied elements of the crime and also stated that Detective Eversole solicited and induced Smoak. Before the first witness was called, the State objected to Smoak's entrapment defense based on the fact that his counsel denied elements of the crime in opening statement. Smoak responded that, pursuant to the holding in *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), he could deny elements of the crime and also raise the defense of entrapment. The circuit court ruled that Smoak had to elect whether to deny the crime or to admit to it and claim entrapment. The jury was not given an entrapment instruction.

■ Entrapment is an affirmative defense that "occurs when a law enforcement officer or any person acting in cooperation with a law enforcement officer induces the commission of an offense by using persuasion or other means likely to cause a normally law-abiding person to commit the offense." Ark.Code Ann. § 5–2–209(b)(1) (Repl.2006). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." Ark.Code Ann. § 5–2–209(b)(2). A defendant bears the burden of proving entrapment by a preponderance of the evidence. *E.g., Elders v. State,* 321 Ark. 60, 900 S.W.2d 170 (1995).

In Arkansas, the law has been that when the defense of entrapment is invoked, it is necessarily assumed that the act charged as an offense was committed. *E.g., Young v. State,* 308 Ark. 647, 826 S.W.2d 814 (1992). We have stated that where an accused insists that he or she did not commit the offense, one of the bases of the entrapment defense is absent and the ac-

cused is not entitled to that defense. *Id.* In a long line of cases, this court has held that a defendant cannot deny the commission of an offense and simultaneously rely on the defense of entrapment. *E.g., Montgomery v. State,* 367 Ark. 485, 241 S.W.3d 753 (2006); *Pyle v. State,* 340 Ark. 53, 8 S.W.3d 491 (2000); *Weaver v. State,* 339 Ark. 97, 3 S.W.3d 323 (1999); *Heritage v. State,* 326 Ark. 839, 936 S.W.2d 499 (1996); *Young, supra; Morris v. State,* 300 Ark. 340, 779 S.W.2d 526 (1989); *Robinson v. State,* 255 Ark. 893, 503 S.W.2d 883 (1974); *Fight v. State,* 254 Ark. 927, 497 S.W.2d 262 (1973).

In *Mathews,* the United States Supreme Court was asked to determine whether a defendant in a federal criminal prosecution who denies commission of the offense may nonetheless have the jury instructed, where the evidence warrants, on the affirmative defense of entrapment. The defendant in *Mathews* filed a motion in limine seeking to raise an entrapment defense. The district court ruled that the entrapment defense was not available to the defendant because he had not admitted all of the elements of the offense charged. At the close of trial, the defendant moved for a mistrial based on the district court's refusal to instruct the jury on entrapment. The district court denied the motion and held that, as a matter of law, the defendant was not entitled to an entrapment instruction because he would not admit committing all elements of the crime charged. The United States Court of Appeals of the Seventh Circuit affirmed the district court's refusal to give the entrapment instruction to the jury. The Supreme Court reversed.

The *Mathews* Court recognized that "[a]s a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to

find in his favor." *Id.* at 63, 108 S.Ct. 883. In addition, the Court noted that both federal and state courts had permitted the raising of inconsistent defenses and that inconsistent pleading was explicitly allowed under the federal rules of civil procedure and impliedly allowed under the federal rules of criminal procedure. Accordingly, the Court held that, "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Mathews,* 485 U.S. at 62, 108 S.Ct. 883.

This court is not bound by the *Mathews* decision because it did not involve the construction of federal constitutional law. *Morris, supra.* We have previously declined to adopt the *Mathews* rule. *See Heritage, supra; Young, supra; Morris, supra.* Nevertheless, Smoak asks this court to do so now and allow him to deny the offense and to assert the defense of entrapment.

The purpose of the entrapment statute is to discourage government activity that might induce innocent persons to engage in criminal conduct. *Spears v. State,* 264 Ark. 83, 568 S.W.2d 492 (1978). The Supreme Judicial Court of Massachusetts opined that

> [t]his purpose could not be served effectively if we require defendants to incriminate themselves by admitting all elements of a crime in order for them to raise the entrapment defense. *See People v. Perez,* [62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934 (1965)]. A defendant is unlikely, in essence, to confess the crime when there is a risk that he will not be able to meet the burden of showing inducement, and also a risk that the jury will find the assertion of inducement noncredible in light of the defendant's admission of the crime. *See People v.*

*D'Angelo, supra,* 401 Mich. [167] at 659 [174–76], 257 N.W.2d 655 [ (1977) ]. Moreover, the ultimate effect of requiring the defendant to admit to the crime in order to raise the defense of entrapment would be to relieve the Commonwealth of its burden of proving all elements of the crime beyond a reasonable doubt. *See Perez, supra.*

*Commonwealth v. Tracey,* 416 Mass. 528, 624 N.E.2d 84, 88 (1993). *See also Morrow v. Commonwealth,* 286 S.W.3d 206, 212 (Ky.2009) ("The obvious danger implicated in not allowing a criminal defendant to alternatively claim innocence and entrapment as a defense is that it forces the defendant to admit to the criminal acts in question in order to have the defense available.").

In a dissenting opinion in *Young,* Justice Newbern concluded that the *Mathews* rule should be adopted by this court, explaining that

[w]hile those theories of defense may be inconsistent, that should not deprive the trier of fact of the opportunity to consider both. A jury could readily decline to believe the accused's denial but believe the evidence of entrapment. Refusal to allow the defense may thus result in infliction of punishment upon a defendant which should not be inflicted upon one who was entrapped. The result may be that the defendant is punished for a serious crime when his "offense" is only that he sought to require the State to prove its case against him in addition to offering an affirmative defense.

*Young,* 308 Ark. at 653, 826 S.W.2d at 817 (Newbern, J., dissenting).

We are persuaded that the purpose of the entrapment statute cannot be served when ₁₀a defendant is required to admit all the elements of the crime, and we agree with the reasoning of Justice Newbern's dissent in *Young.* Accordingly, we abolish the rule that a defendant cannot deny the commission of an offense and simultaneously assert the defense of entrapment. We adopt the *Mathews* rule and hold that a defendant is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, even if the defendant denies one or more elements of the crime.[2] We express no opinion regarding whether sufficient evidence of entrapment exists in this case, and we reverse and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

CORBIN, GUNTER and BAKER, JJ., concur in part and dissent in part.

DONALD L. CORBIN, Justice, concurring in part and dissenting in part.

While I agree with the majority's conclusion that there was sufficient evidence supporting Appellant's conviction, I disagree with the majority's decision to reverse and remand this case because Appellant failed to properly preserve the entrapment issue for our review.

It is a well-settled principle of appellate jurisprudence that this court will not review an allegation that a circuit court erred in failing to give an instruction

---

**2.** We acknowledge that in *Morris,* we stated that we could think of two situations where our prior cases and *Mathews* would conflict: (1) when the accused denies committing the offense charged, but the prosecution's case-in-chief includes substantial evidence of entrapment, and (2) when the accused is charged with conspiracy, but denies being party to the conspiracy, and claims that any overt acts done by him were the result of entrapment. 300 Ark. at 342, 779 S.W.2d at 527. Those statements were merely dicta. Our decision today does not limit the application of the *Mathews* rule to those two situations.

where the appellant failed to proffer such instruction. *E.g., Davis v. State,* 2009 Ark. 478, 348 S.W.3d 553; ₁₁*Robertson v. State,* 2009 Ark. 430, 347 S.W.3d 460; *Wallace v. State,* 326 Ark. 376, 931 S.W.2d 113 (1996); *Pearson v. State,* 307 Ark. 360, 819 S.W.2d 284 (1991); *Hart v. State,* 301 Ark. 200, 783 S.W.2d 40 (1990). Moreover, it is Appellant's burden to proffer the instruction to the trial court and then to include the proffered instruction in the record and abstract. *Davis,* 2009 Ark. 478, 348 S.W.3d 553.

Appellant, in his reply brief, seems to suggest that the importance of this issue, i.e., whether this court should adopt the holding in *Mathews v. United States,* 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), somehow vitiates the requirement that he produce a sufficient record on appeal. We simply should not ignore a defect such as this one because Appellant asserts that the issue before us is an important one. Every issue that comes before this court is important.

I am sympathetic to Appellant's counsel. After voir dire, but prior to the presentation of evidence, counsel attempted to assert the argument that Appellant should be allowed to pursue a defense of innocence and have the jury instructed on the defense of entrapment. The circuit court very brusquely cut counsel off and told her that if she did not stop arguing the issue, he was going to hold her in contempt. Nevertheless, counsel continued to try to make her argument and finally the circuit court announced:

> You're making argument with me again. Do you understand that?
>
> I'm holding at this time that you have to make an election; that you either go one of two ways. If you want an instruction as you—basically I believe that's what you want—you've said all along in voir dire. The offense—I

mean, the fact that it happened has to be admitted. I mean, you can't argue it both ways.

Again, the circuit court told counsel to stop arguing with him and to note her exception for the record. The court then stated as follows:

> ₁₂What I am saying to you is, that will be my ruling is that I will make a determination as to whether or not you're entitled to have an entrapment instruction. If you go forward with saying, he didn't do it; okay? I won't give the instruction on entrapment; okay? Because you need to know that.
>
> . . . .
>
> And all I'm doing is telling you at this time that whether or not I give your entrapment instruction or not will depend on how this case flows.

Thereafter, in discussing jury instructions, the State asked that the jury be instructed that it could not consider the defense of entrapment because Appellant had pursued the defense of innocence. The circuit court agreed, over Appellant's objection, and explained to the jury as follows:

> On certain instances during this trial, you have heard the word entrapment. And you have heard that you will get an instruction on that.
>
> To—the Court has removed that instruction, and you're not to consider entrapment in this matter. I do—am stating to you that you are to consider what is in the instructions. And I'm merely stating that because it had been brought up before. And you might have questions about that as to why it's not in there. It has been removed to no prejudice of anyone as far as this matter is concerned. It's the Court that made that determination.

During the discussion between the court and counsel, Appellant's counsel objected to the court instructing the jury that they could no longer consider an entrapment defense. At no time, however, did counsel attempt to proffer an entrapment instruction. Yes, the circuit court was brusque, even threatening counsel with contempt earlier in the trial. But, ultimately, the circuit court gave Appellant the choice to proceed with an entrapment defense if he so desired. Appellant had an opportunity to proffer an instruction on entrapment but simply failed to do so. The majority's decision to overlook this fatal error baffles me. The majority cannot say that the circuit court prevented Appellant from proffering an entrapment instruction, as the record simply does not support such a conclusion. In fact, the record reveals that the circuit court was following the applicable law at the time, which was that a party could not proceed with an entrapment defense if he denied committing the offense. *Young v. State,* 308 Ark. 647, 826 S.W.2d 814 (1992).

To my knowledge, we have never made an exception to the requirement that a party must proffer a jury instruction on the basis that the circuit court would not allow a party to proceed with inconsistent theories. In fact, in *Thomas v. State,* 62 Ark.App. 168, 973 S.W.2d 1 (1998), the court of appeals refused to consider the appellant's argument that the circuit court erred in failing to instruct the jury on self-defense where the prosecutor forced the appellant to choose between the defenses of accident and self-defense. The court of appeals held that it was the appellant's burden to proffer the instruction on self-defense, regardless of the fact that he was not allowed to pursue both theories. Similarly, in an unpublished opinion, the court of appeals held that in a case where the circuit court stated that it would not instruct the jury on both justification and

certain lesser-included offenses, the appellant was nonetheless required to proffer an instruction on justification, even after electing to forgo the defense, in order to preserve the issue on appeal. *Sanders v. State,* CACR 91–310, 1992 WL 146606 (Ark.App. June 24, 1992) (unpublished).

Here, Appellant had the opportunity to proffer an instruction on entrapment but failed to do so. The majority's decision to completely ignore this fatal mistake goes against our well-established precedent that a party must proffer an instruction in order to preserve the issue for appeal. Accordingly, I respectfully dissent to this court's reversal and remand of this case.

Concurring in part; dissenting in part.

GUNTER, J., joins.

KAREN R. BAKER, Justice, concurring in part and dissenting in part.

While I agree with the majority in its adoption of the *Mathews* rule, the facts of this case are such that the circuit court's refusal to give an entrapment instruction was harmless error. For that reason, I would affirm the decision of the circuit court.

Although the court will presume prejudice from an erroneous instruction, the error may be rendered harmless by other factors in the case. *Advocat, Inc. v. Sauer,* 353 Ark. 29, 111 S.W.3d 346 (2003). While the majority states no opinion on the issue, I am of the opinion that insufficient evidence of entrapment exists in this case to support a finding of reversible error. The State's entire contact with Smoak prior to arrest is contained within the internet chat logs offered into evidence at trial. The evidence presented in the chat logs does not constitute sufficient evidence from which a reasonable jury could find entrapment. As shown in the internet

chat logs, Smoak was the first person to bring up sex in his conversation with the person he thought was a 15–year–old girl. He also initiated the topic of meeting at the girl's home. Under Arkansas Code Annotated section 5–2–209(b), Detective Eversole's actions in speaking with Smoak online simply afforded Smoak an opportunity to commit an offense; to the contrary, none of Detective Eversole's conduct would induce or persuade a normally law-abiding person to attempt to have sex with an underage girl. *See* Ark.Code Ann. § 5–2–209(b).

I agree that the circuit court's refusal to provide an entrapment instruction to the jury was an error of law. However, because a reasonable jury could not have found that the actions of Detective Eversole as an agent of the State were entrapment, this error was harmless.

I would affirm.

GUNTER, J., joins.