JIM HANNAH, Chief Justice, dissenting. Because I believe the jury’s guilty verdict is supported by substantial evidence, I respectfully dissent. “A person commits the offense of internet stalking of a child if the person being twenty-one (21) years of age or older knowingly uses a computer online service, internet service, or local internet bulletin board service to ... seduce, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity.” Ark.Code Ann. § 5-27-S06(a)(2)(A)-(C) (Supp.2009) (emphasis added). On appeal, Holcomb argues that the circuit court erred in denying his motion for directed verdict because the State failed to prove that he made any effort to arrange a meeting with the person he believed to be fifteen-year-old Amanda. Although “in an effort” is not defined in the subsection (a) of the statute, the meaning is clear when read in conjunction with subsection (b) of the statute. See id. § 5 — 27—306(b)(1)—(2) (stating that the offense of internet stalking of a child is a Class B felony (1) if the person attempts to arrange a meeting with a child fifteen years of age or younger, even if a meeting with the child never takes | nplace, or (2) if the person attempts to arrange a meeting with an individual that the person believes to be fifteen years of age or younger, even if a meeting with the individual never takes place) (emphasis added). “In an effort,” as used in the statute means “in an attempt.” The criminal offense of attempt has a specific legal meaning, which is not the ordinary meaning of the word. The ordinary meaning of “attempt” is “[t]he act or an instance of making an effort to accomplish something, esp. without success.” Black’s Law Dictionary 146 (9th ed.2009); see also Webster’s Third New Int’l Dictionary 2457 (2002) (stating that “attempt” is synonymous with “try”).[1] Here, Holcomb was not charged with attempt of a criminal offense, so the ordinary meaning of the word “attempt” should be used. Simply stated, did Holcomb make an effort, or try, to arrange a meeting? 112The following evidence was adduced at trial. On March 19, 2010, Holcomb told Amanda that he loved sex and said, “id fuck the hell outta you,” adding that she was “sexy,” but “kinda young,” and then telling her, “but i don’t give a shit if you don’t.”[2] After Amanda told Holcomb that she had previously met someone online, Holcomb asked her how old the person was and “how many guys” she had been with. Amanda replied that the person she had previously met online had been about thirty years old and that she had “been” with five guys. Holcomb asked Amanda if she was in the tenth grade, and she again told him she was in the ninth. He then told her that she should drive to Little Rock when she turned sixteen. Amanda responded that Holcomb could “drive here now,” but Holcomb said that she lived with her parents. Amanda said that she lived only with her mom, who was at work. Holcomb asked Amanda to send him a picture, and she said that she did not have “any naked ones.” Holcomb told her to take one, but Amanda told him that her grandmother had the digital camera. Amanda also told Holcomb, “if my mom looked through my computer and found a pic like that she would frickin kill me.” Holcomb responded, “i bet she still thinks youre a virgin,” and told Amanda to “get on birth control.” While exchanging messages with Amanda on June 4, 2010, Holcomb told Amanda, “ur so hot u make my popsicle melt.” He again asked when she would turn sixteen, and Amanda replied, “in a few weeks.” Holcomb asked Amanda where she was, and when she 11p,told him Van Burén, he said, “my buddy lives there.” Holcomb then said that he would be going to Rogers the next day “for some work shit” and asked Amanda if she wanted him “to go up a night early to go see my buddy in van burén.” He said if he came to see her, “we’d have fun,” and he asked Amanda if her mother still worked at night. Subsequently, Holcomb told Amanda that he had texted his friend, but that the friend was out of town and would not be back in Van Burén until the next night and then would leave to go to Dallas. So, Holcomb told Amanda he would not be coming to Van Burén. Amanda asked Holcomb how long it would take for him to drive to Van Burén, and he replied, “it would take forever ... 3 hours.” Holcomb then told Amanda to text him a “naked pic,” and asked her what grade she would be in next year. Amanda said that she would be in the tenth grade, and Holcomb told Amanda that she was “young,” and “that is the only way i wouldnt fuck you.” Holcomb added, “if i felt guilty about how young you are ... but youre sexy and i don’t think youre seared.” Holcomb then told Amanda she should not be scared, that “we’d fuck all night,” and to “get a car and come here.” He said that if his “boy” was in town, “i’d make the excuse to visit him ... and if your mom was working, i’d come over.” Holcomb then asked Amanda if she was on birth control, and she said, “not yet.” He responded that he was “not using a condom,” and Amanda told him that she was not “gettin pregnant.” Holcomb said, “then i’ll pull out obviously.” Holcomb asked Amanda if she would “be scared to death if i really did come over? ? ?” Amanda said that she would be “anxious., worried that u wouldnt like me thats all.” Amanda suggested that Holcomb “get a room” and she could tell her mom she was spending the night with a friend. Holcomb said that was a “great idea |14... except im broke.” He then asked her if they could “try another time,” and Amanda said that he would “come up with another excuse.” During the June 4, 2010 conversation, Holcomb invited Amanda to view his web-cam. Amanda accepted the invitation, and Holcomb proceeded to expose his penis and masturbate.[3] Referring to his penis, Holcomb asked, “so you think you could handle all that for all night?” Amanda said that she would “sure like to give it a try.” Holcomb told Amanda, “i might cum in your mouth,” and she said, “i wouldnt mind that at all.” Amanda asked Holcomb how much a room cost and told him that she had $65. Holcomb told Amanda that would “prolly” be enough for a room, but they did not discuss plans to get one. Detective Eversole testified at trial that on June 13 or 14, 2010, he called Holcomb. An audio tape of the conversation was played for the jury: EveRsole: Hey, Derek. What’s going on? Holcomb: Doing all right. Eversole: Hey, this is Donald Eversole with the Van Burén Police Department. Holcomb: With who? Eversole: Donald Eversole with the Van Burén Police Department. Holcomb: All right. Eversole: The — the reason Pm calling is the — I work the — the ICAC. It’s called Internet Crimes Against Children. Holoomb: Okay. lisEversóle: And I worked that case with — with—with you, Derek. Holoomb: Really? Eversole: Yeah. The — you’ve been talking to a — a girl down here from Van Burén, a 15-year-old girl from Van Burén. Holoomb: Okay. Eversole: The — I think that girl’s got— we used a copy of the — webcams and stuff like that because she got you on webcam several times. Holoomb: Okay. Eversole: And one of those times, you exposed yourself. Holcomb: Oh, okay. Yeah, I’ve done that before. Eversole-. Well, you know, you — you— you — you can’t chat with a 15-year-old girl and talk about coming to Van Burén to have sex with her. You know that, right? Holcomb: Oh, okay. Yeah, I mean I know there’s a line there. Eversole: Well, you crossed it, Derek. Holcomb: Okay. Eversole then informed Holcomb that he was going to be charged with the offense of internet stalking of a child, that a warrant was being prepared for his arrest, and that he needed to come to Van Burén to turn himself in. Holcomb did so. Holcomb testified at trial that he was “disgusted” at his behavior, that the language he used in the chat sessions with Amanda was “vile and disgusting,” and that he was “embarrassed and ashamed.” But he stated that he never arranged a meeting with Amanda because she was not sixteen. He acknowledged that he had masturbated for Amanda, in a |1fiwebcam video, but he said that he was “playing a game ... playing hypotheticals that I knew wouldn’t happen for my own self-gratification, which, of course, is terrible, but I did not arrange to meet the character for sex.” Holcomb testified that when Amanda made reference to meeting, he “deflected,” stating that he had lied when he told Amanda he did not have any money to pay for a hotel room. He further testified that he had no intention of ever traveling to Van Burén to meet Amanda. Holcomb stated that it was his belief that he was not guilty of internet stalking of a child because he never set a specific date and time for a meeting. When questioned on cross-examination about his message to Amanda asking her if she wanted him to come visit his friend in Van Burén so he could meet her, Holcomb stated, “[w]ell, that time came and went and I didn’t. Why didn’t I? Because the intent was never to do that ... I was simply — I was playing a game — and that is part of a — of a tease.” While Holcomb contends that he never attempted to arrange a meeting with Amanda, the June 4, 2010 chat log reveals that Holcomb offered to go to Van Burén that night and stay with a friend so he could see Amanda. The fact that Holcomb told Amanda that his friend was not home does not negate the fact that he and Amanda had discussed the possibility of Holcomb’s going to Van Burén on June 4. Moreover, the time stamp for the chat log for June 4 reveals that, although Holcomb told Amanda at 4:58 p.m. that he was not going to Van Burén that night, at 5:09 p.m., he told Amanda that, if they met each other, they would “fuck all night,” and when Amanda told him he was making excuses for not coming to see her, he told her to “get a car and come here” at 5:12 p.m. | ,7The majority concludes that the record is “absent substantial evidence that Holcomb acted in an effort to arrange a meeting” with a person he believed to be fifteen years old and that “[although Holcomb’s messages pose hypotheticals they did not demonstrate that he made an overt act[4] or determined attempt to plan to meet” Amanda. The majority appears to agree with Holcomb’s assertion that the State failed to prove that he had made an effort to arrange a meeting with Amanda because, during his conversations with her, he was only playing a game and had no intention of ever meeting her. A criminal defendant s intent is seldom capable of proof by direct evidence. E.g., Young v. State, 371 Ark. 393, 400, 266 S.W.3d 744, 749 (2007). Accordingly, jurors are allowed to draw upon their common knowledge and experience to infer intent from the circumstances. E.g., Davis v. State, 2009 Ark. 478, at 10-11, 348 S.W.3d 553, 560. A copy of the chat logs was admitted into evidence, and a webcam video of Holcomb masturbating during an online conversation with Amanda was played for the jury. The jury heard Holcomb’s testimony that he did not attempt to arrange a meeting with Amanda because he was merely playing games or teasing and never intended to meet her. The jury also heard Eversole’s testimony about the online conversations he had with Holcomb when Ev-ersole was posing as Amanda, a fifteen-year-old girl from Van Burén. Specifically, the jury heard evidence that Holcomb discussed going to Van Burén to see Amanda, and when that attempt to arrange a meeting was unsuccessful, he told Amanda to “get a car and come here.” In addition, Holcomb told Amanda that when she turned sixteen, she should drive to meet lishim in Little Rock. Even if, as Holcomb contends, his comments were conditioned on Amanda’s being sixteen years old, the statute prohibits the seduction, luring, or enticement of an individual that the person believes to be fifteen years of age or younger. Holcomb admitted that he believed that Amanda was fifteen years old when he repeatedly initiated sexually explicit communications with her and when he masturbated for her on his webcam. The jury has the sole authority to evaluate the credibility of witnesses and to apportion the weight to be given to the evidence. E.g., Smoak v. State, 2011 Ark. 529, at 6, 385 S.W.3d 257, 261. The jury may resolve questions of conflicting testimony and inconsistent evidence, and the jury may choose to believe the State’s account of the facts rather than the defendant’s. Id., 385 S.W.3d at 261. Viewing the evidence in the light most favorable to the verdict, it was reasonable for the jury to infer from the circumstances that Holcomb used the internet to seduce, solicit, lure, or entice an individual he believed to be fifteen years old in an effort to arrange a meeting for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity. The jury was not obligated to accept Holcomb’s alternate explanation, and the majority should not substitute its judgment for that of the jury. I conclude that substantial evidence exists to support the conviction, accordingly, I would affirm. CORBIN and DANIELSON, JJ„ join this dissent. . In contrast, under the criminal law, "attempt” is defined as "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime.” Black’s Law Dictionary 146 (9th ed.2009). Under Arkansas law, a person attempts to commit an offense if he or she purposely engages in conduct that (1) would constitute an offense if the attendant circumstances were as the person believes them to be; or (2) constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as the person believes them to be. Ark.Code Ann. § 5-3-201(a) (Repl.2013). The statute further states: (b)When causing a particular result is an element of the offense, a person commits the offense of criminal attempt if, acting with the kind of culpable mental state otherwise required for the commission of the offense, the person purposely engages in conduct that constitutes a substantial step in a course of conduct intended or known to cause the particular result. (c) Conduct is not a substantial step under this section unless the conduct is strongly corroborative of the person’s criminal purpose. Id. § 5 — 3—201 (b) — (c). . Because internet communication is often informal, involving typographical errors, shorthand, symbols, and abbreviations, I have not used "[sic]” to indicate every error or mistake in the original text. See, e.g., United States v. Tello, 600 F.3d 1161, 1163 n. 2 (9th Cir.2010); United States v. Mitchell, 353 F.3d 552, 555 n. 4 (7th Cir.2003). . The webcam video was played for the jury. . Holcomb was not charged with criminal attempt. See supra note 1.