2012 Ark. 16

**Ronald Wayne MAGNESS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 11–445.**

Supreme Court of Arkansas.

Jan. 19, 2012.

Timothy R. Leonard, Hamburg, for appellant.

Dustin McDaniel, Atty. Gen., by: William Andrew Gruber, Asst. Atty. Gen., Little Rock, for appellee.

KAREN R. BAKER, Justice.

Appellant Ronald Wayne Magness appeals his conviction of escape in the second degree pursuant to Arkansas Code Anno-

tated section 5–54–111(a)(2) (Supp.2009). The court of appeals certified this case as involving an issue of first impression and a substantial question of law concerning the validity, construction, or interpretation of an act of the Arkansas General Assembly. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1) and (6) (2011). For reversal, appellant asserts that the State failed to prove that he was "in custody," which is a required element of the charged offense. We reverse and dismiss.

On March 31, 2010, a Drew County jury found appellant guilty of two nonviolent felony offenses. The circuit court entered an order the same date releasing appellant on a $25,000 bond pending bed space pursuant to Arkansas Code Annotated section 16–90–122 (Supp.2007), subject to the following conditions: (1) appellant must meet or contact the |₂Drew County Sheriff's Department and his bondsman every Friday; (2) appellant must inform the Drew County Sheriff's Department of his address before release and not change it without the approval of his bondsman and the sheriff; (3) appellant could not leave the State of Arkansas without written permission of the Drew County Sheriff; and (4) appellant could not commit any new offenses. The order further stated that "Any noncompliance shall result in execution of the judgment."

In April 2010, appellant left the State of Arkansas without written permission and failed to contact the sheriff's department and his bondsman in violation of the conditions of his release. An information was filed charging appellant with second-degree escape, a class B felony.[1] A jury convicted appellant of escape in the second degree in violation of Arkansas Code Annotated section 5–54–111(a)(2) (Supp.2009). He was sentenced as a habitual offender to

thirty years' imprisonment in the Arkansas Department of Correction ("DOC").

■ The single issue presented in this appeal is whether appellant was in custody. Appellant moved for a directed verdict at the close of the State's case and again at the close of all the evidence. Appellant argues that the circuit court erred in denying his motion for directed verdict because the State failed to prove that he was "in custody" as defined by Arkansas Code Annotated section 5–54–101 (Repl. 2005). The statute authorizing his release, section 16–90–122, refers to the "release of an offender in the sheriff's custody" and to the "offender's return to custody" upon notice of available bed space in the DOC.

■ |₃A motion for directed verdict is a challenge to the sufficiency of the evidence, and the test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Anderson v. State*, 2011 Ark. 461, 385 S.W.3d 214. Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

It is a question of first impression whether a convicted felon released on a bed-space bond is in constructive custody so as to make him criminally liable for second-degree escape when he violates a condition of his release. To answer this question, we must determine the meaning of the phrase "in custody" as it is used in sections 5–54–101 and 5–54–111, in harmony with an offender's release from and return to custody as it is used in section 16–90–122.

---

1. The information also charged appellant with failure to register, a class C felony. The State nolle prossed the failure-to-register charge prior to trial.

We review issues involving statutory construction de novo, as it is for this court to decide the meaning of a statute. *State v. Britt,* 368 Ark. 273, 275–76, 244 S.W.3d 665, 667 (2006). When reviewing issues of statutory interpretation, the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; that intent must be gathered from the plain meaning of the language used. *Id.* This court will not interpret a legislative act in a manner contrary to its express language unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.* Further, penal statutes are to be strictly construed, and all doubts are to be resolved in favor of the defendant. *Id.* If possible, we construe statutes relating to the same subject matter together and in harmony. *Bush v. State,* 338 Ark. 772, 2 S.W.3d 761 (1999).

In the case of nonviolent, nonsexual offenses, the circuit court has the authority to permit the temporary release of a defendant from the sheriff's custody pending availability of bed space in the DOC. *See* Ark.Code Ann. § 16–90–122(a). The circuit court may authorize the release under the terms and conditions that the court determines necessary to protect the public and to ensure the defendant's return to custody upon notice that bed space is available. *See* Ark.Code Ann. § 16–90–122(c)(1). The circuit court may require a cash or professional bond to be posted in an amount suitable to ensure the defendant's return to custody. *See* Ark.Code Ann. § 16–90–122(c)(2). The phrases "return to custody" and "temporary release" are not defined in the Code.

Arkansas Code Annotated section 5–54–111 provides in pertinent part: "(a) A person commits the offense of second-degree escape if he or she: ... (2) Having been found guilty of a felony, escapes from custody." Ark.Code Ann. § 5–54–111(a)(2). The word "escape" is defined to mean "the unauthorized departure of a person from custody[.]" Ark.Code Ann. § 5–54–101(5). The Code defines "custody" as "actual or constructive restraint by a law enforcement officer pursuant to an arrest or a court order." Ark.Code Ann. § 5–54–101(3)(A).

This court has never before had occasion to consider the interplay of these statutes. In *Bush v. State, supra,* the court interpreted the phrase "in custody" as it is used in section 5–4–404. In *Bush,* the defendant had been released on bond while awaiting trial on criminal charges, and his release was conditioned on his enrollment in an electronic-monitoring program for 325 days. *Bush,* 338 Ark. at 775, 2 S.W.3d at 763. On appeal, the defendant asserted that the trial court erred in refusing to credit his sentence with the 325–day period of time that he was in the electronic-monitoring program. *Id.* In construing the phrase, we observed that "in custody" has varied meanings depending upon the context in which it is used. *Id.* at 776, 2 S.W.3d at 763. We noted that for purposes of *Miranda* warnings, a person is in custody "when he or she is deprived of freedom of action by formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.* We contrasted this with the use of "in custody" in Rule 37 postconviction proceedings where a person is in custody

"only when he or she is actually physically incarcerated." *Id.* These examples demonstrated that the statutory language "in custody" as used in section 5–4–404 was ambiguous because it was dependent on the context; therefore, the court was required to look to the legislative intent to determine the meaning of the phrase in context. *Id.*

When the *Bush* court looked at the legislative intent, it noted that the punishment for leaving an electronically monitored area was set by the enactment of the separate offense of absconding, which differed from the existing offenses for escape. *Id.; see also* Ark.Code Ann. §§ 5–54–110 to –112. The court further distinguished the prior-to-commitment electronic-monitoring program, for which the court concluded the defendant was not in custody, from the postconviction home-detention program with electronic monitoring, for which the General Assembly provided that the DOC must award a defendant credit against his sentence for time spent in the program. *Id.; see* Ark.Code Ann. § 16–93–708 (Supp.1999).

The instant case is distinguishable because appellant was not awaiting trial. He had been convicted and was awaiting notice that space was available in the DOC. However, *Bush* is instructive because it recognized that other pretrial statutes have only two options for defendants awaiting trial: release on bail or remain in custody. *Id.* In reaching the conclusion that for purposes of section 5–4–404, the phrase "in custody" should exclude defendants released on bond, the court looked at the definition of "bail bond" as "a bond for a specified monetary amount . . . as security for subsequent court appearance of the defendant upon his release from actual custody pending the appearance." *Id.* at 778, 2 S.W.3d at 764 (quoting Ark.Code Ann. § 17–19–101 (Repl.1995)). We then noted that "[t]here is a conspicuous absence of any language suggesting a circumstance other than bond or actual custody, thereby manifesting a legislative intent that the phrase 'in custody' applies only to circumstances where the individual is not released on bond." *Id.* at 778–79, 2 S.W.3d at 764. This rationale would apply equally to postconviction release pursuant to Arkansas Code Annotated section 16–90–122, where the legislature authorized the circuit court to require a cash or professional bond to "ensure the offender's return to custody." *See* Ark.Code Ann. § 16–90–122(c)(2); *see, e.g., Suit v. State*, 212 Ark. 584, 207 S.W.2d 315 (1947) (holding that pronouncing a sentence terminated the sureties' liability on a pretrial bail bond, taking a defendant out of the custody of the bail and placing him in the custody of the law, and observing that a new postsentence bond could have been taken to secure the defendant's return to custody of the law-enforcement officers); *Hester v. State*, 145 Ark. 347, 224 S.W. 618 (1920) (noting that a bond effectuates a release of a defendant from custody during the pendency of an appeal).

The State asserts that appellant was in "constructive restraint" and thus was in custody for purpose of the escape statute. The State argues that the conditions that the circuit court imposed on appellant constituted constructive restraint by the Drew County Sheriff. We have not defined "constructive restraint" in the context of the escape statutes. However, from the plain meaning of the statute, the legislature's intent was to "authorize the temporary release of an offender in the sheriff's custody" upon such terms and conditions that the circuit judge may deem necessary "to ensure the offender's return to custody" including requiring a professional bond. Ark.Code Ann. § 16–90–122. The statute clearly contemplates a temporary release of the offender, which may be subject to obtaining a bond, and a subsequent

return to custody. As in *Bush,* there is a "conspicuous absence" of any language in the statute "suggesting a circumstance other than bond or actual custody[.]" *Bush,* 338 Ark. at 778–79, 2 S.W.3d at 764.

Here, the evidence at trial showed that appellant was released from custody, subject to several conditions, including procuring a bond to secure his return to custody. The State presented testimony from the Drew County Chief Deputy Circuit Clerk, Sandy Erlanson, that appellant was convicted of a felony and sentenced to a term of imprisonment in the 8DOC. Erlanson also stated that the judgment directs the county sheriff to transport appellant to the DOC. Drew County Sheriff Mark Gober testified that bed-space releases are common, sometimes for several months, in Drew County. Gober also testified that appellant had to meet certain conditions, was not free to come and go as he pleased, and was released from jail and not in his custody. The Drew County Circuit Court's order was admitted into evidence, and it set forth the conditions of appellant's release. Gober testified that he has the authority to bring a defendant who violates any condition of an order back to jail. Linda Booker testified that her company issued the bond allowing appellant's release. She stated that it is not uncommon to stay on the bond after someone is convicted of a felony, such as when there is a delay between the date of conviction and the date they are delivered to the penitentiary pending bed space. Booker said that a bond is not a form of custody, but a form of control over the defendant. Lori Abbondola–Peters testified that she was appellant's girlfriend and that she fled the State of Arkansas with him to avoid his prison sentence. Drew County Sheriff's Deputy Ben Michel testified that he drove to Aurora, Colorado, to pick up appellant and Abbondola–Peters from the jail and drove them back to Drew County.

Based on the foregoing evidence, appellant was clearly released under section 16–90–122, and the condition ensuring his return to custody when bed space was available was procuring a professional bond. Appellant was released on bond and not in custody of the law-enforcement officers. Thus, although he violated the conditions of the order allowing his release, he did not escape from custody; and the circuit court erred in denying his motion for directed verdict.

Reversed and dismissed.