

# SUPREME COURT OF ARKANSAS

No. CR-13-690

| | |
|---|---|
| DEREK COY HOLCOMB<br>APPELLANT | **Opinion Delivered** April 3, 2014 |
| V. | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CR-2010-339] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE MIKE MEDLOCK, JUDGE |
| | <u>REVERSED AND DISMISSED</u>. |

## KAREN R. BAKER, Associate Justice

Appellant, Derek Coy Holcomb, was convicted by a Crawford County Circuit Court jury of one count of internet stalking of a child. Holcomb was sentenced to a five-year suspended sentence and an $8,000 fine. This court has jurisdiction pursuant to Ark. Sup. Ct. R. 1-2(b)(1), (5), and (6) (2013), as this case presents issues of first impression, substantial public interest, and the constitutionality of the statute.

Between October 23, 2009, and June 10, 2010, Holcomb engaged in online chats with a person identified on Yahoo internet service as "Amanda," who used the screen name "pageant_gurl43." "Amanda" or "pageant_gurl43" was actually Detective Donald Eversole with the Van Buren Police Department; Detective Eversole set up a profile for a fictional fifteen-year-old girl on an internet-romance chat room. Holcomb and Eversole exchanged 846 instant messages through the chat room. The two exchanged messages about age, sexual experience, residence, and photos of each other, as well as sexually explicit exchanges. After

SLIP OPINION

these exchanges, on June 28, 2010, Holcomb was arrested for internet stalking of a child in violation of Ark. Code Ann. § 5-27-306. Holcomb's first trial ended in a hung jury; he was re-tried on March 11, 2013, and the jury found him guilty. This appeal followed.

Holcomb raises two points on appeal: (1) the circuit court erred by denying Holcomb's motion for directed verdict, and (2) the circuit court erred in denying Holcomb's motion to declare Ark. Code Ann. § 5-27-306 unconstitutional under the First Amendment.

*Sufficiency of the Evidence*

For his first point on appeal, Holcomb asserts that the circuit court erred in denying his motion for directed verdict on one count of internet stalking of a child.

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). We will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Ricks v. State*, 316 Ark. 601, 873 S.W.2d 808 (1994). We need consider only that testimony which supports the verdict of guilty. *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Finally, "we strictly construe criminal statutes and resolve any doubts in favor of the defendant. There is no better settled rule in criminal jurisprudence than that criminal statutes must be strictly construed and

SLIP OPINION

pursued. The courts cannot, and should not, by construction or intendment, create offenses under statutes which are not in express terms created by the Legislature." *Williams v. State*, 347 Ark. 728, 742, 67 S.W.3d 548, 556 (2002) (internal citations omitted).

Holcomb's first point on appeal requires us to interpret the statute at issue, Ark. Code Ann. § 5–27–306(a)(2) (Supp. 2009). The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Magness v. State*, 2012 Ark. 16, 386 S.W.3d 390. When the language is plain and unambiguous, there is no need to resort to rules of statutory construction, and the analysis need go no further. *Id.* We review issues of statutory interpretation de novo because it is for this court to decide what a statute means. *Id.* When dealing with a penal statute, this court strictly construes the statute in favor of the party sought to be penalized. *Id.*

The relevant statute, Ark. Code Ann. § 5–27–306(a)(2), provides:

(a) A person commits the offense of internet stalking of a child if the person being twenty-one (21) years of age or older knowingly uses a computer online service, internet service, or local internet bulletin board service to:
(2) Seduce, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in:
(A) Sexual intercourse;
(B) Sexually explicit conduct; or
(C) Deviate sexual activity. . . .

A violation of this subsection is a Class B felony if the person "attempts to arrange a meeting with a child fifteen (15) years of age or younger," even if a meeting never takes place, and it is a Class A felony if an actual meeting with the child does takes place. Ark. Code Ann.

§ 5-27-306(b).

Holcomb contends that the circuit court erred in denying his motion for directed verdict because the State failed to put forth sufficient evidence that he had seduced, solicited, lured, or enticed Eversole in an "effort to arrange a meeting" with a person he believed to be fifteen years old. Further, citing to multiple cases from our court of appeals, Holcomb contends that our appellate courts have never upheld a conviction under this statute absent a defendant's specific arrangement to meet with the victim.[1]

The State responds that the statute does not require a specific arrangement to meet the victim and that the discussions between Holcomb and Eversole were sufficient to show an effort to arrange a meeting for the purpose of sexual activity.

At issue is whether there is sufficient evidence to demonstrate that Holcomb acted in an *effort to arrange a meeting* with Eversole. In applying our rules of statutory interpretation, we must give the words their ordinary and usually accepted meaning. *Oxford American Dictionary* defines "effort" as "determined attempt." "Arrange" is defined as "organize or make plans." Meeting is defined as "a coming together of two or more people." *Oxford American Dictionary* 544, 87 (2001). Applying these ordinary definitions to the statutory language, Holcomb must have made a determined attempt to organize or plan a coming together with Eversole, who he believed was fifteen years old.

Turning to the facts of Holcomb's case, we review the evidence in the light most

---

[1]*See, e.g., Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257; *Todd v. State*, 2012 Ark. App. 626; *Tipton v. State*, 2011 Ark. App. 166; *Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008); *Gikonyo v. State*, 102 Ark. App. 223, 283 S.W.3d 631 (2008).

SLIP OPINION

favorable to the State. The record contains 846 messages that were exchanged between Eversole and Holcomb between October 23, 2009, and June 10, 2010. The State introduced the transcript of messages exchanged through Detective Eversole. The State specifically points to the following exchanges and asserts that the nature of the exchanges demonstrates Holcomb's effort to arrange a meeting. On March 19, 2010, the two exchanged the following messages:

> HOLCOMB:   I think you should drive to lr [Little Rock] when you turn 16.
> . . .
>
> EVERSOLE:   u can drive here …here now….
>
> HOLCOMB:   hmmmm.
>
> HOLCOMB:   but you still live with your parents.

On June 4, 2010, the two exchanged the following messages:

> HOLCOMB:   where are u at? fort smith?
>
> EVERSOLE:   van buren….u know where that is?
>
> HOLCOMB:   yeah.
>
> HOLCOMB:   my buddy lives there.
>
> EVERSOLE:   cool.
>
> HOLCOMB:   …im going to rogers tomorrow.
>
> EVERSOLE:   why.
>
> HOLCOMB:   for work shit.
> . . .
>
> HOLCOMB:   want me to go up a night early to go to see my buddy in van buren?

5

EVERSOLE:    really.

HOLCOMB:    Yeah maybe.

EVERSOLE:    really....just to see me....really

HOLCOMB:    well im heading that direction this weekend anyway.

HOLCOMB:    i havent visited my boy in a while

EVERSOLE:    cool....that would be fun...

HOLCOMB:    just text messaged my boy

HOLCOMB:    he isnt in van buren tonight

HOLCOMB:    he'll be back tomorrow for a sec.

HOLCOMB:    but then has to go to dallas

EVERSOLE:    so u aint coming

HOLCOMB:    guess not

· · ·

EVERSOLE:    yeah yeah ....ok....sounds like all talk....gonna come and see me ..then change ur mind....but its cool.

· · ·

HOLCOMB:    youre 15 and live with your mom!

EVERSOLE:    so.

Later on June 4, 2010, the two exchanged the following messages:

HOLCOMB:    you'd be scared to death if i really did come over????

EVERSOLE:    what…heck…no…we     have     talk     for     a     while…not

scared....anxious..worried u wouldnt like me thats all.

· · ·

SLIP OPINION

HOLCOMB:    well, i would

EVERSOLE:    u have said that and then u said that it was too far to drive.

HOLCOMB:    it is 3 hours, babe.

EVERSOLE:    i get...no worries

HOLCOMB:    and no definite place to stay the night

EVERSOLE:    get a room...i could tell my mom that i was staying the night with a friend.

. . .

HOLCOMB:    thats a great idea

HOLCOMB:    except im broke.

. . .

EVERSOLE:    yeah yeah ...another excuse...its cool

. . .

HOLCOMB:    my boy isnt in town

HOLCOMB:    too broke for a hotel room

EVERSOLE:    ok...then we r out of luck then

HOLCOMB:    try another time?

EVERSOLE:    yeah and u will come up with another excuse.

In reviewing the record in the light most favorable to the State, we note the following additional exchanges. On April 2, 2010, the two exchanged the following messages:

HOLCOMB:    old enough for guys to come see you.

. . .

EVERSOLE:    well yeah.

. . .

HOLCOMB:    too bad im not closer.

EVERSOLE:    yep.

HOLCOMB:    sorry.

On June 4, 2010, the two also exchanged the following messages:

HOLCOMB:    come up there an bang you all night???

. . .

EVERSOLE:    how long would it take u to get here...lol

HOLCOMB:    it would take forever.

EVERSOLE:    wow....k...thats far

HOLCOMB:    i know

                                    . . .

EVERSOLE:    . . . how much does it cost for a room....i got a lil money...damn u

HOLCOMB:    depends on the place

EVERSOLE:    i got like 65 dollars....

. . .

EVERSOLE:    u think that would be enough

HOLCOMB:    prolly

EVERSOLE:    k

HOLCOMB:    ok i gotta go eat

On June 10, 2010, the two also exchanged the following messages:



HOLCOMB:   if you lived any closer, we'd get together tonight

EVERSOLE:   mmm.....that would be fricking nice

The State asserts that the discussions described *supra* serve as substantial evidence to support that Holcomb engaged "in an effort to arrange a meeting" with Eversole and satisfies the statutory requirement of acting "in an effort to arrange a meeting." We disagree. These passages do not support that Holcomb made a determined attempt to arrange a meeting with Eversole. A review of the record demonstrates a lack of substantial evidence to support that Holcomb attempted to plan or arrange a meeting with Eversole. This court must strictly construe statutes in favor of the defendant, and the record is simply absent substantial evidence to support that Holcomb acted in an effort to arrange a meeting with a person he believed to be fifteen years old. Although Holcomb's messages pose hypotheticals, they do not demonstrate that he made a determined attempt to plan to meet Eversole.[2] In fact, the record demonstrates that Holcomb declined Eversole's request to meet several times. We hold, therefore, that there was not substantial evidence to find that Holcomb's conduct satisfied the statutory requirements. Thus, the circuit court erred in denying Holcomb's motion for

---

[2]The dissent states that "[t]he majority appears to agree with Holcomb's assertion that the State failed to prove that he had made an effort to arrange a meeting with Amanda because, during his conversations with her, he was only playing a game and had no intention on ever meeting her[.]" This is incorrect. We do not refer to Holcomb's intent. Rather, we review the evidence in the light most favorable to the State and conclude that there is not substantial evidence to support the State's assertion that Holcomb acted "in an effort to arrange a meeting" as required by the statute. Additionally, there is no question as to credibility, as the dissent asserts. Instead, the exchanges between Holcomb and Eversole are precisely reproduced in the record and are undisputed. While those exchanges are undoubtably reprehensible, they simply fail to prove that Holcomb acted "in an effort to arrange a meeting."

directed verdict.

Accordingly, Holcomb's conviction and sentence are reversed and dismissed. Because we have reversed and dismissed on Holcomb's first point, we do not reach his remaining point on appeal.

Reversed and dismissed.

HANNAH, C.J., and CORBIN and DANIELSON, JJ., dissent.

**JIM HANNAH, Chief Justice, dissenting.** Because I believe the jury's guilty verdict is supported by substantial evidence, I respectfully dissent. "A person commits the offense of internet stalking of a child if the person being twenty-one (21) years of age or older knowingly uses a computer online service, internet service, or local internet bulletin board service to . . . seduce, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger *in an effort to arrange a meeting* with the individual for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity." Ark. Code Ann. § 5-27-306(a)(2) (A)-(C) (Supp. 2009) (emphasis added).

On appeal, Holcomb argues that the circuit court erred in denying his motion for directed verdict because the State failed to prove that he made any effort to arrange a meeting with the person he believed to be fifteen-year-old Amanda. Although "in an effort" is not defined in the subsection (a) of the statute, the meaning is clear when read in conjunction with subsection (b) of the statute. *See id*. § 5-27-306(b)(1)-(2) (stating that the offense of internet stalking of a child is a Class B felony (1) if the person *attempts* to arrange a meeting with a child fifteen years of age or younger, even if a meeting with the child never takes

place, or (2) if the person *attempts* to arrange a meeting with an individual that the person believes to be fifteen years of age or younger, even if a meeting with the individual never takes place) (emphasis added). "In an effort," as used in the statute means "in an attempt." The criminal offense of attempt has a specific legal meaning, which is not the ordinary meaning of the word. The ordinary meaning of "attempt" is "[t]he act or an instance of making an effort to accomplish something, esp. without success." *Black's Law Dictionary* 146 (9th ed. 2009); *see also Webster's Third New Int'l Dictionary* 2457 (2002) (stating that "attempt" is synonymous with "try").[1] Here, Holcomb was not charged with attempt of a criminal offense, so the ordinary meaning of the word "attempt" should be used. Simply stated, did Holcomb make an effort, or try, to arrange a meeting?

---

[1]In contrast, under the criminal law, "attempt" is defined as "[a]n overt act that is done with the intent to commit a crime but that falls short of completing the crime." *Black's Law Dictionary* 146 (9th ed. 2009). Under Arkansas law, a person attempts to commit an offense if he or she purposely engages in conduct that (1) would constitute an offense if the attendant circumstances were as the person believes them to be; or (2) constitutes a substantial step in a course of conduct intended to culminate in the commission of an offense whether or not the attendant circumstances are as the person believes them to be. Ark. Code Ann. § 5–3–201(a) (Repl. 2013). The statute further states:

> (b)When causing a particular result is an element of the offense, a person commits the offense of criminal attempt if, acting with the kind of culpable mental state otherwise required for the commission of the offense, the person purposely engages in conduct that constitutes a substantial step in a course of conduct intended or known to cause the particular result.

> (c) Conduct is not a substantial step under this section unless the conduct is strongly corroborative of the person's criminal purpose.

*Id.* § 5–3–201(b)–(c).

11

The following evidence was adduced at trial. On March 19, 2010, Holcomb told Amanda that he loved sex and said, "id fuck the hell outta you," adding that she was "sexy," but "kinda young," and then telling her, "but i don't give a shit if you don't."[2] After Amanda told Holcomb that she had previously met someone online, Holcomb asked her how old the person was and "how many guys" she had been with. Amanda replied that the person she had previously met online had been about thirty years old and that she had "been" with five guys. Holcomb asked Amanda if she was in the tenth grade, and she again told him she was in the ninth. He then told her that she should drive to Little Rock when she turned sixteen. Amanda responded that Holcomb could "drive here now," but Holcomb said that she lived with her parents. Amanda said that she lived only with her mom, who was at work. Holcomb asked Amanda to send him a picture, and she said that she did not have "any naked ones." Holcomb told her to take one, but Amanda told him that her grandmother had the digital camera. Amanda also told Holcomb, "if my mom looked through my computer and found a pic like that she would frickin kill me." Holcomb responded, "i bet she still thinks youre a virgin," and told Amanda to "get on birth control."

While exchanging messages with Amanda on June 4, 2010, Holcomb told Amanda, "ur so hot u make my popsicle melt." He again asked when she would turn sixteen, and Amanda replied, "in a few weeks." Holcomb asked Amanda where she was, and when she

---

[2]Because internet communication is often informal, involving typographical errors, shorthand, symbols, and abbreviations, I have not used "[sic]" to indicate every error or mistake in the original text. *See, e.g.*, *United States v. Tello*, 600 F.3d 1161, 1163 n.2 (9th Cir. 2010); *United States v. Mitchell*, 353 F.3d 552, 555 n.4 (7th Cir. 2003).

told him Van Buren, he said, "my buddy lives there." Holcomb then said that he would be going to Rogers the next day "for some work shit" and asked Amanda if she wanted him "to go up a night early to go see my buddy in van buren." He said if he came to see her, "we'd have fun," and he asked Amanda if her mother still worked at night. Subsequently, Holcomb told Amanda that he had texted his friend, but that the friend was out of town and would not be back in Van Buren until the next night and then would leave to go to Dallas. So, Holcomb told Amanda he would not be coming to Van Buren. Amanda asked Holcomb how long it would take for him to drive to Van Buren, and he replied, "it would take forever . . . 3 hours." Holcomb then told Amanda to text him a "naked pic," and asked her what grade she would be in next year. Amanda said that she would be in the tenth grade, and Holcomb told Amanda that she was "young," and "that is the only way i wouldnt fuck you." Holcomb added, "if i felt guilty about how young you are . . . but youre sexy and i don't think youre scared." Holcomb then told Amanda she should not be scared, that "we'd fuck all night," and to "get a car and come here." He said that if his "boy" was in town, "i'd make the excuse to visit him . . . and if your mom was working, i'd come over." Holcomb then asked Amanda if she was on birth control, and she said, "not yet." He responded that he was "not using a condom," and Amanda told him that she was not "gettin pregnant." Holcomb said, "then i'll pull out obviously." Holcomb asked Amanda if she would "be scared to death if i really did come over???" Amanda said that she would be "anxious. . worried that u wouldnt like me thats all." Amanda suggested that Holcomb "get a room" and she could tell her mom she was spending the night with a friend. Holcomb said that was a "great idea

. . . except im broke." He then asked her if they could "try another time," and Amanda said that he would "come up with another excuse."

During the June 4, 2010 conversation, Holcomb invited Amanda to view his webcam. Amanda accepted the invitation, and Holcomb proceeded to expose his penis and masturbate.[3] Referring to his penis, Holcomb asked, "so you think you could handle all that for all night?" Amanda said that she would "sure like to give it a try." Holcomb told Amanda, "i might cum in your mouth," and she said, "i wouldnt mind that at all." Amanda asked Holcomb how much a room cost and told him that she had $65. Holcomb told Amanda that would "prolly" be enough for a room, but they did not discuss plans to get one.

Detective Eversole testified at trial that on June 13 or 14, 2010, he called Holcomb. An audio tape of the conversation was played for the jury:

EVERSOLE:   Hey, Derek. What's going on?

HOLCOMB:   Doing all right.

EVERSOLE:   Hey, this is Donald Eversole with the Van Buren Police Department.

HOLCOMB:   With who?

EVERSOLE:   Donald Eversole with the Van Buren Police Department.

HOLCOMB:   All right.

EVERSOLE:   The – – the reason I'm calling is the – – I work the – – the ICAC. It's called Internet Crimes Against Children.

HOLCOMB:   Okay.

---

[3]The webcam video was played for the jury.

EVERSOLE: And I worked that case with – – with – – with you, Derek.

HOLCOMB: Really?

EVERSOLE: Yeah. The – – you've been talking to a – – a girl down here from Van Buren, a 15-year-old girl from Van Buren.

HOLCOMB: Okay.

EVERSOLE: The – – I think that girl's got – – we used a copy of the – – webcams and stuff like that because she got you on webcam several times.

HOLCOMB: Okay.

EVERSOLE: And one of those times, you exposed yourself.

HOLCOMB: Oh, okay. Yeah, I've done that before.

EVERSOLE: Well, you know, you – – you – – you – – you can't chat with a 15-year-old girl and talk about coming to Van Buren to have sex with her. You know that, right?

HOLCOMB: Oh, okay. Yeah, I mean I know there's a line there.

EVERSOLE: Well, you crossed it, Derek.

HOLCOMB: Okay.

Eversole then informed Holcomb that he was going to be charged with the offense of internet stalking of a child, that a warrant was being prepared for his arrest, and that he needed to come to Van Buren to turn himself in. Holcomb did so.

Holcomb testified at trial that he was "disgusted" at his behavior, that the language he used in the chat sessions with Amanda was "vile and disgusting," and that he was "embarrassed and ashamed." But he stated that he never arranged a meeting with Amanda because she was not sixteen. He acknowledged that he had masturbated for Amanda, in a

webcam video, but he said that he was "playing a game . . . playing hypotheticals that I knew wouldn't happen for my own self-gratification, which, of course, is terrible, but I did not arrange to meet the character for sex." Holcomb testified that when Amanda made reference to meeting, he "deflected," stating that he had lied when he told Amanda he did not have any money to pay for a hotel room. He further testified that he had no intention of ever traveling to Van Buren to meet Amanda. Holcomb stated that it was his belief that he was not guilty of internet stalking of a child because he never set a specific date and time for a meeting. When questioned on cross-examination about his message to Amanda asking her if she wanted him to come visit his friend in Van Buren so he could meet her, Holcomb stated, "[w]ell, that time came and went and I didn't. Why didn't I? Because the intent was never to do that. . . I was simply – – I was playing a game – – and that is part of a – – of a tease."

While Holcomb contends that he never attempted to arrange a meeting with Amanda, the June 4, 2010 chat log reveals that Holcomb offered to go to Van Buren that night and stay with a friend so he could see Amanda. The fact that Holcomb told Amanda that his friend was not home does not negate the fact that he and Amanda had discussed the possibility of Holcomb's going to Van Buren on June 4. Moreover, the time stamp for the chat log for June 4 reveals that, although Holcomb told Amanda at 4:58 p.m. that he was not going to Van Buren that night, at 5:09 p.m., he told Amanda that, if they met each other, they would "fuck all night," and when Amanda told him he was making excuses for not coming to see her, he told her to "get a car and come here" at 5:12 p.m.

16

The majority concludes that the record is "absent substantial evidence that Holcomb acted in an effort to arrange a meeting" with a person he believed to be fifteen years old and that "[a]lthough Holcomb's messages pose hypotheticals they did not demonstrate that he made an overt act[4] or determined attempt to plan to meet" Amanda. The majority appears to agree with Holcomb's assertion that the State failed to prove that he had made an effort to arrange a meeting with Amanda because, during his conversations with her, he was only playing a game and had no intention of ever meeting her.

A criminal defendant's intent is seldom capable of proof by direct evidence. *E.g.*, *Young v. State*, 371 Ark. 393, 400, 266 S.W.3d 744, 749 (2007). Accordingly, jurors are allowed to draw upon their common knowledge and experience to infer intent from the circumstances. *E.g.*, *Davis v. State*, 2009 Ark. 478, at 10–11, 348 S.W.3d 553, 560.

A copy of the chat logs was admitted into evidence, and a webcam video of Holcomb masturbating during an online conversation with Amanda was played for the jury. The jury heard Holcomb's testimony that he did not attempt to arrange a meeting with Amanda because he was merely playing games or teasing and never intended to meet her. The jury also heard Eversole's testimony about the online conversations he had with Holcomb when Eversole was posing as Amanda, a fifteen-year-old girl from Van Buren. Specifically, the jury heard evidence that Holcomb discussed going to Van Buren to see Amanda, and when that attempt to arrange a meeting was unsuccessful, he told Amanda to "get a car and come here." In addition, Holcomb told Amanda that when she turned sixteen, she should drive to meet

---

[4]Holcomb was not charged with criminal attempt. *See supra* note 1.

him in Little Rock. Even if, as Holcomb contends, his comments were conditioned on Amanda's being sixteen years old, the statute prohibits the seduction, luring, or enticement of an individual that the person believes to be fifteen years of age or younger. Holcomb admitted that he believed that Amanda was fifteen years old when he repeatedly initiated sexually explicit communications with her and when he masturbated for her on his webcam.

The jury has the sole authority to evaluate the credibility of witnesses and to apportion the weight to be given to the evidence. *E.g.*, *Smoak v. State*, 2011 Ark. 529, at 6, 385 S.W.3d 257, 261. The jury may resolve questions of conflicting testimony and inconsistent evidence, and the jury may choose to believe the State's account of the facts rather than the defendant's. *Id.*, 385 S.W.3d at 261. Viewing the evidence in the light most favorable to the verdict, it was reasonable for the jury to infer from the circumstances that Holcomb used the internet to seduce, solicit, lure, or entice an individual he believed to be fifteen years old in an effort to arrange a meeting for the purpose of engaging in sexual intercourse, sexually explicit conduct, or deviate sexual activity. The jury was not obligated to accept Holcomb's alternate explanation, and the majority should not substitute its judgment for that of the jury. I conclude that substantial evidence exists to support the conviction, accordingly, I would affirm.

CORBIN and DANIELSON, JJ., join this dissent.

*John Wesley Hall, Jr.*, and *Sarah M. Pourhosseini*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.