Cite as 2019 Ark. App. 593

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR-19-561

| | | |
|---|---|---|
| D.Q. | | **Opinion Delivered** December 11, 2019 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | | [NO. 72JV-19-133] |
| STATE OF ARKANSAS | | HONORABLE STACEY |
| | APPELLEE | ZIMMERMAN, JUDGE |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant D.Q. was charged as a juvenile and accused of being an accomplice to theft of property, accomplice to commercial burglary, accomplice to first-degree criminal mischief, and a minor in possession of a handgun. Appellant was fifteen years old at the time of the alleged crimes. The State filed a motion to transfer the case from the juvenile division of circuit court to the criminal division of circuit court, which was granted. On appeal, appellant argues that the circuit court committed reversible error because (1) it conducted the transfer hearing more than thirty days after appellant was detained in violation of Ark. Code Ann. § 9-27-318(f) (Repl. 2015), and (2) there was insufficient evidence to support the decision to transfer. We affirm.

The charges arose from a February 2019 break-in at an Ace Hardware store located in Prairie Grove. The store's glass door, alarm system, glass rifle case panel, and glass handgun case panel were damaged or destroyed. More than seventy firearms were stolen.

Appellant allegedly acted in concert with three other juveniles. Appellant was detained on February 21. The State filed a motion to transfer on March 20.[1] On March 21, the circuit court set the transfer hearing for March 28.

On March 27, appellant filed a response to the State's motion, alleging that the circuit court was statutorily required to hold the transfer hearing within thirty days and that pursuant to the rules of civil procedure, the last day to conduct the hearing was March 25, so March 28 would be three days too late.[2] Appellant cited Ark. Code Ann. § 9-27-318(f): "The court shall conduct a transfer hearing within thirty (30) days if the juvenile is detained and no longer than ninety (90) days from the date of the motion to transfer the case." Appellant contended that construing the time limitations of Ark. Code Ann. § 9-27-318(f) would be a matter of first impression, that the date of detention was the proper initiating date, and that this necessitated dismissal of the State's motion to transfer.

At the March 28 hearing, the State argued that appellant's statutory interpretation was incorrect, that a plain reading meant that the thirty days began to run from the date its motion was filed, and that this transfer hearing was conducted eight days later, well within statutory time limitations. The circuit court concluded that a plain reading of the statute,

---

[1] Appellant had four pending juvenile cases, 72JV-18-932, 72JV-19-44, 72JV-19-133, and 72JV-19-168, all of which were included in the State's motion to transfer. The State voluntarily withdrew its motion to transfer on three of the cases. The order on appeal concerns only 72JV-19-133, so we will confine our discussion of the facts and evidence to that case.

[2] Appellant initiated the thirty days from the date appellant was detained, February 21. Appellant calculated that the thirtieth day was Saturday, March 23, and the next business day was Monday, March 25.

and common sense, required that the motion's filing was the date that triggered the statutory time limitations.

The State then put on its evidence in support of the motion to transfer out of the juvenile division. Prairie Grove's police chief testified that he responded to a burglary at the hardware store. The glass door and glass gun cases were broken; fifty-two pistols, fifteen revolvers, three shotguns, and five rifles or long guns had been stolen. Following an investigation, four juveniles, including appellant, were arrested. Twenty-six of the firearms had been recovered, one from a high school student who had taken a pistol to school, one from a known felon, and one from a homicide suspect. Police learned through their investigation that appellant was actively involved in planning this burglary while he was in juvenile detention in the month or so leading up to this break-in. Another juvenile in detention had provided written statements and Snapchat messages to the police to show that appellant tried to recruit him as a getaway driver for this burglary.

A Fayetteville police detective testified that the police recovered a large revolver from a shooting in which one person was killed and another was injured. The revolver (identified by its serial numbers) had been stolen from the hardware store about a month before the shooting.

Appellant's probation officer from a prior delinquency proceeding (involving theft by receiving and possession of a handgun) testified that appellant had been on probation from September 2017 through August 2018 and that appellant completed his probation successfully. One condition of his probation was that he not possess guns. Appellant's current juvenile officer testified that he conducted a structured assessment on appellant to

3

determine his risk of violence. The assessment was required by the court, and the results showed that appellant was at high risk of reoffending, leading to a recommendation of high-level supervision. The juvenile officer explained that appellant was impulsive, did not consider consequences of his actions, engaged in risky and disruptive behaviors, and had anger-management issues. Appellant's referrals to juvenile court all involved his gang-related peer group. Appellant was behind in his school credits despite being previously sent to a couple different alternative schools to recover credits. Appellant did not seem to have a drug or alcohol problem, and there was a nine-week juvenile boot camp as a potential service, but his firearm-related offenses might prevent him from being admitted to the boot camp program. The juvenile officer acknowledged that if appellant remained in the juvenile system, he could be assessed and treated for his disruptive behaviors in the Division of Youth Services.

The State argued that appellant was currently charged with serious felony offenses in which appellant was heavily involved, protection of society warranted his going to adult court, especially considering that the stolen firearms ended up being used in other serious crimes, and appellant was a high-risk individual who did not benefit from any prior services offered to him. Defense counsel argued that while the current charges were serious, they were not serious enough to warrant transfer into the adult criminal court, and there were other resources available in the juvenile system that could help him.

The circuit court granted the State's motion to transfer, rendering findings from the bench on each of the relevant statutory factors. The oral ruling was memorialized in a seven-page written order. Among the findings, the circuit court found that: (1) the crimes

4

involved the stealing of numerous firearms, some of which had been connected to other crimes and some of which were unaccounted for in the community, demonstrating a need to protect society; (2) appellant and other juveniles acted in unison and with a high level of premeditation to break in to the store, destroy a considerable amount of the store's property, and steal numerous firearms; (3) though the crimes were against property, the theft of firearms led to their distribution in the community directly impacting public safety; (4) appellant was very involved in the preplanning and execution of those plans; (5) appellant had a history of possession of firearms and had recently completed a prior probationary period that involved a firearm-related crime; (6) despite having supportive parents, appellant has been involved with significant risky and gang-related behaviors, has anger issues, and has impulse-control problems; (7) appellant had been provided earlier juvenile court services, he might not be accepted into the remaining boot camp program because of the involvement of firearms in this case, and short of commitment to juvenile lockup, services had been exhausted; (8) appellant planned this crime with other juveniles while in juvenile detention a month or so before this break-in occurred; and (9) the juvenile court's prior risk assessment showed that appellant had a high risk of violence, indicating the need for a high level of supervision.  The circuit court's order was filed, and this appeal followed.

Appellant first argues that the circuit court erred in its interpretation of the time limit within which a motion to transfer must be heard.  We disagree. In considering the meaning and effect of a statute, we first construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Magness v. State*, 2012 Ark. 16, 386 S.W.3d 390.  When the language is plain and unambiguous, we will not resort to rules of

5

statutory construction, and the analysis need go no further. *Id.* We review issues of statutory interpretation de novo because it is for this court to decide what a statute means. *Id.* When dealing with a penal statute, this court strictly construes the statute in favor of the party sought to be penalized. *Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600; *K.F. v. State*, 2019 Ark. App. 312, 578 S.W.3d 324. The basic rule of statutory construction is to give effect to the intent of the legislature. *See Pritchett v. City of Hot Springs*, 2017 Ark. 95, 514 S.W.3d 447. It is also a fundamental canon of construction that when interpreting or construing a statute, the court may consider the text as a whole to derive its meaning or purpose. *Schnarr v. State*, 2018 Ark. 333, 561 S.W.3d 308.

Arkansas Code Annotated section 9-27-318(f) sets out time limitations in which to hear a motion to transfer: "The court shall conduct a transfer hearing within thirty (30) days if the juvenile is detained and no longer than ninety (90) days from the date of the motion to transfer the case." In subsection (e), immediately preceding subsection (f), the legislature defines the procedure more clearly by stating that "*Upon the motion* of the court or of any party, *the judge* of the division of circuit court in which a delinquency petition or criminal charges have been filed *shall conduct a transfer hearing* to determine whether to transfer the case to another division of circuit court." (Emphasis added.) Reading the two subsections together, it becomes evident that the legislature intended the time limitations to commence from the date the motion is filed. A plain reading mandates this construction, no other construction is reasonable, and appellant's desired interpretation creates disharmony between subsections (e) and (f).

6

Appellant's other point on appeal challenges the circuit court's decision to transfer this case to the criminal division of circuit court. The State, as the moving party, bore the burden of proving by clear and convincing evidence that appellant's case should be transferred. *Magana-Galdamez v. State*, 104 Ark. App. 280, 291 S.W.3d 203 (2009). The court shall order the case transferred to another division of circuit court only upon a finding by clear and convincing evidence that the case should be transferred. Ark. Code Ann. § 9-27-318(h)(2). Clear and convincing evidence is the degree of proof that will produce in the trier of fact a firm conviction as to the allegation sought to be established. *Lindsey v. State*, 2016 Ark. App. 355, 498 S.W.3d 336. Appellant argues that the circuit court's findings are clearly erroneous and do not warrant transfer when measured by a clear-and-convincing standard. We disagree.

Pursuant to Arkansas Code Annotated section 9-27-318(g), the circuit court shall consider all of the following factors in a transfer hearing:

(1) The seriousness of the alleged offense and whether the protection of society requires prosecution in the criminal division of circuit court;

(2) Whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner;

(3) Whether the offense was against a person or property, with greater weight being given to offenses against persons, especially if personal injury resulted;

(4) The culpability of the juvenile, including the level of planning and participation in the alleged offense;

(5) The previous history of the juvenile, including whether the juvenile had been adjudicated a juvenile offender and, if so, whether the offenses were against person or property, and any other previous history of antisocial behavior or patterns of physical violence;

(6) The sophistication or maturity of the juvenile as determined by consideration of the juvenile's home, environment, emotional attitude, pattern of living, or desire to be treated as an adult;

(7) Whether there are facilities or programs available to the judge of the juvenile division of circuit court that are likely to rehabilitate the juvenile before the expiration of the juvenile's twenty-first birthday;

7

(8) Whether the juvenile acted alone or was part of a group in the commission of the alleged offense;

(9) Written reports and other materials relating to the juvenile's mental, physical, educational, and social history; and

(10) Any other factors deemed relevant by the judge.

The circuit court is required to make written findings on all the factors listed above, Ark. Code Ann. § 9-27-318(h)(1), which the circuit court did in this case. However, there is no requirement that proof be introduced against the juvenile on each factor, and the circuit court is not obligated to give equal weight to each of these factors in determining whether a case should be transferred. *D.D.R. v. State*, 2012 Ark. App. 329, 420 S.W.3d 494. We will not reverse a circuit court's determination whether to transfer a case unless that decision is clearly erroneous. *M.R.W. v. State*, 2012 Ark. App. 591, 424 S.W.3d 355. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Lindsey v. State*, *supra*. We are not left with such a firm conviction that a mistake was made in this case.

Appellant addresses each statutory factor and argues that the evidence simply does not weigh in favor of transferring the case to the criminal division, either individually or collectively. Appellant's arguments focus on the following: this was simply a property crime; appellant was not accused of actually harming anyone with the firearms nor was he accused of participating in the subsequent firearms-related crimes in the community; no witnesses (i.e. other juveniles) were present to verify that he was part of the preplanning of the crimes or that he was any more responsible for planning than the other juveniles; he had successfully completed his prior juvenile probation; he had supportive parents; and there remained

rehabilitative services in the juvenile system. The State counters that its evidence, and the circuit court's evaluation of the evidence, more than amply supports the court's decision to transfer.

Appellant essentially asks us to reweigh the evidence in a manner more favorable to him than did the circuit court, which is not our function on appeal. *See McClendon v. State*, 2019 Ark. App. 115, 572 S.W.3d 443; *Drexler v. State*, 2018 Ark. App. 95, 538 S.W.3d 888. On de novo review, we hold that the circuit court did not clearly err in finding that appellant has not benefited from his prior juvenile court involvement or the services he received and that his misbehavior and anger issues demonstrate a need to protect society from appellant's persistent lawlessness, particularly gun-related lawlessness. *See Collins v. State*, 322 Ark. 161, 908 S.W.2d 80 (1995). Based on the record before us, we cannot say that the circuit court's findings were clearly erroneous.

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Eric Moore*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael L. Yarbrough*, Ass't Att'y Gen., for appellee.